KENNEDY, Justice.
The plaintiff, John W. Bailey, appeals from summary judgments entered in favor *590 of defendants Ray D. Bass, B.A. Riddle, Joe Black, and Tom Cain.[1] We affirm.
The dispositive issue in the case before us is whether defendant Tom Cain is entitled to discretionary function immunity from tort liability.
On April 24, 1985, Bailey was injured when two 34-foot spans of the Chickasa-bogue Creek Bridge collapsed while he was driving his vehicle across it. The collapse was due to corrosion of the bridge’s underwater steel substructure. In April 1987, Bailey sued, as individuals and in their official capacities, the director of the State Highway Department, Bass; the maintenance bureau chief, Cain; the assistant maintenance engineer, Riddle; and the division bridge inspector for the Ninth Division, Black. Bailey alleged negligence in (1) the research, engineering, and design of the bridge; (2) the construction of the bridge; (3) the failure to inspect, test, and maintain the underwater substructure of the bridge; (4) the failure to notify the public that the bridge was structurally unsafe; and (5) the failure to create, adopt, and implement a highway bridge inspection, testing, and repair policy under established federal guidelines.
In Count Five of his complaint, Bailey specifically averred that Cain “negligently failed to create, adopt, and implement an adequate highway bridge inspection, testing, and repair policy which required or mandated underwater inspection of the Chickasabogue Creek Bridge structure on a regular basis.” Bailey premised his argument on the existence of federal guidelines issued to the states regarding the adoption and implementation of state bridge inspection programs.[2] He argues that these inspection programs mandated manual inspection or investigation of a bridge’s substructure below the water’s surface to detect corrosion and deterioration, and therefore, that Cain’s job in developing the bridge inspection program for the state was not discretionary in nature. We disagree.
Cain was a public official who acted within the general scope of his authority in performing functions that involve a degree of discretion. Although the state may have had no discretion not to inspect at all, Cain was performing a discretionary function “in determining the manner of carrying out these inspections, i.e. determining the method and means.” Grant v. Davis, 537 So.2d 7, 10 (Ala.1988). He is, there *591 fore, entitled to discretionary function immunity in this action. “Whether a particular defendant is engaged in a protected discretionary function, and is thereby immune from liability, is a question of law to be decided by the trial court.” Woods v. Wilson, 539 So.2d 224 (Ala.1989); Barnes v. Dale, 530 So.2d 770 (Ala.1988).
Based upon the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, SHORES and HOUSTON, JJ., concur.

. The plaintiff concedes that Perry v. Mobile County, 497 So.2d 829 (Ala.1986), is dispositive of his claims against defendants Bass, Riddle, and Black. Accordingly, the plaintiff directs his arguments on appeal only to defendant Tom Cain.

. These guidelines recommending the establishment of a bridge inspection program are promulgated by the "American Association of State Highway and Transportation Officials" ("AASH-TO”). The relevant portion of the AASHTO guidelines is as follows:
"2.3 FREQUENCY OF INSPECTION
“Each bridge is to be inspected at regular intervals not to exceed two years by personnel having the necessary qualifications as previously stated. The depth and frequency to which bridges are to be inspected will depend on such factors as age, traffic characteristics, state of maintenance, and known deficiencies. The evaluation of these factors will be the responsibility of the individual in charge of the inspection program. Some items such as boring timber, checking submerged portions of submarine cables, etc., require less frequent inspections as noted in 2.4 Inspection Procedures and Reports.
[[Image here]]
“At the discretion of the Engineer, some of these interim inspections may be delegated to highway maintenance personnel who have been instructed specifically in their inspection assignments, methods of reporting their findings, and procedures to be followed in the event of a bridge emergency situation....
[[Image here]]
"2.4 INSPECTION PROCEDURES AND REPORTS
[[Image here]]
"2.4.2 Inspection Procedures....
[[Image here]]
"(3) Piers and Abutments. Investigate the footings for evidence of significant scour or undercutting.... Probing and/or diving will be necessary at many piers. This will normally be required at approximately five-year intervals except under unusual conditions....
[[Image here]]
"(4) Bents.... Examine steel and concrete piles both within the splash zone and below water surface for corrosion and deterioration.”