605 So.2d 828 (1992)
Millicent B. TAYLOR, et al.
v.
Billy S. SHOEMAKER, et al.
Billy S. SHOEMAKER, et al.
v.
Millicent B. TAYLOR, et al.
1901748, 1901804.
Supreme Court of Alabama.
September 11, 1992.
Stanley E. Munsey of Munsey, Ford & Heflin, Tuscumbia, for appellants/cross-appellees.
*829 Jerry L. Weidler, Counsel, State of Ala. Highway Dept., Montgomery, for appellees/cross-appellants.
James H. Evans, Atty. Gen., and Robert M. Weinberg, Asst. Atty. Gen., for amici curiae Atty. Gen. and State Departments, Boards & Agencies.
Kendrick E. Webb and Bart Harmon of Webb, Crumpton, McGregor, Davis & Alley, Montgomery, for amicus curiae Ala. Sheriffs' Ass'n.
Mark Williams, Montgomery, for amicus curiae Ala. State Employees Ass'n.

ON APPLICATION FOR REHEARING
MADDOX, Justice.
The original opinion released in this case on January 24, 1992, in which a majority of the Justices on this Court determined that the defendant State Highway Department officials were not immune from suit because they were not engaged in a discretionary function, is withdrawn, and the following opinion is substituted in lieu thereof.
Millicent B. Taylor was driving an automobile along U.S. Highway 72 in Colbert County, Alabama. Her minor daughter, Laura, was a passenger in the car. A truck suddenly pulled into Ms. Taylor's lane, causing her to swerve and lose control of the car. Ms. Taylor's car collided with railroad rails that had been imbedded in concrete and that extended several feet vertically into the air to protect a railroad crossing signal located near the entrance to Vulcan Materials Company's plant. The driver of the truck did not stop and has not been located. Ms. Taylor and Laura received severe injuries. Ms. Taylor; Laura, by and through her father and next friend, James L. Taylor; and James L. Taylor, individually, sued Vulcan Materials Company and Southern Railway Company. The plaintiffs also joined Billy S. Shoemaker, James Lamon, and Arlond T. Scott, all of whom are employees of the Alabama Highway Department, as defendants. Shoemaker, Lamon, and Scott moved for a summary judgment on the grounds that there was no genuine issue as to any material fact and that they were entitled to a judgment as a matter of law because, they argued, they are immune from personal liability under the doctrine of discretionary function immunity. The trial court entered a summary judgment for those three defendants and made that judgment final under Rule 54(b), Ala.R.Civ.P. The plaintiffs appealed. Shoemaker, Lamon, and Scott cross-appealed, contending that the trial court erred by failing to specifically base the summary judgment on the ground that they were immune from tort liability. They contend that they were immune because, they say, at the times of the alleged negligent acts or omissions with which they were charged, they were acting within the general scope of their responsibilities and were engaged in the exercise of discretionary functions.
In their complaint, the plaintiffs alleged that Shoemaker, Lamon, and Scott negligently allowed the placement, installation, or erection of the railroad crossing signal and the rails that protected the signal. The undisputed evidence shows that the signal was installed in 1975 by Signal Systems Company; that the rails protecting the signal were installed by employees of Vulcan Materials Company in 1977 or 1978; and that Shoemaker, Lamon, and Scott assumed their positions with the Highway Department after the signal and the rails protecting the signal had been erected and while they were in place. The summary judgment was appropriate as to this aspect of the complaint.
The plaintiffs further alleged that Shoemaker, Lamon, and Scott negligently failed to remove the railroad crossing signal and the rails after the railroad spur line had been discontinued and the signal was no longer necessary. The accident occurred in 1988; Shoemaker had been division engineer since 1980; Lamon had been district engineer since 1983; and Scott had been highway superintendent since 1986.
The plaintiffs recognize that § 14 of the Constitution of Alabama of 1901 ("the State of Alabama shall never be made a defendant in any court of law or equity") extends immunity to state officers and employees *830 acting within their official capacities, but contend that a tortious act by a state officer or employee removes such an officer or employee from this immunity. They cite Finnell v. Pitts, 222 Ala. 290, 132 So. 2 (1930). By a four-to-three vote, this Court held in that case:
"We also think that this suit does not violate the constitutional prohibition against suing the state. For though the state cannot be sued (section 14, Constitution), its immunity from suit does not relieve the officers of the state from their responsibility for an illegal trespass or tort on the rights of an individual, even though they act pursuant to authority attempted to be conferred by the state. For when the state officers take private property though they apply it to a public use, a tort has been committed by them. Private property rights have been thereby unlawfully disturbed by them. We believe that the rule is universal that an agent is not excused from personal liability for a tort which he commits for and in the name of his principal, whether the principal is liable to suit or not.
"The decisions of this court and the authorities generally apply that principle to torts committed by state officers in the name of the state and on account of the state's public affairs. An individual cannot justify a tort on a contention that it is for the state, if the state had no such right. If the state had the right, then its officers, acting by its authority, were justified. The officers cannot be justified upon a mistaken notion of state authority. An inadvertent tort-feasor is such, though he may not be liable to the amount of damages as a willful tortfeasor would be. The question now being discussed is not the extent of liability, but the fact of liability vel non. If in the promotion of the state's business its officers without authority of law apply private property to the state's enterprises, they are guilty of the same nature of wrong, as if they were acting as agents of a private corporation. The wrong is that of the officers personally as well as that of their principal. The officers are sued, not because the state has committed a wrong, but because they personally, though acting as officers, have done so. When a person commits a tort, it is wholly immaterial upon the question of his liability, whether he was acting officially or personally."
222 Ala. at 292-93, 132 So. at 4-5. (Citations omitted.)
The holding by a majority of this Court in Finnell v. Pitts should be read in light of later cases decided by this Court involving the immunity of public officers. The law of this State is that there is immunity when the state officer or employee has not exceeded his or her authority, but has merely negligently performed a statutory duty while acting pursuant to statutory authority. Gill v. Sewell, 356 So.2d 1196 (Ala.1978). Likewise, consistent with Restatement (Second) of Torts, § 895D, "Public Officers" (1974), there is immunity when the state officer or employee commits a tort while engaged in the exercise of a discretionary function. Sellers v. Thompson, 452 So.2d 460 (Ala.1984). Consequently, any statements made in Finnell v. Pitts, supra, and Elmore v. Fields, 153 Ala. 345, 45 So. 66 (1907) (the only Alabama authority on which the majority of this Court relied in Finnell), regarding the application of the qualified immunity defense should be considered in light of these later holdings.
The specific issue presented in this case is whether Shoemaker, Lamon, and Scott are immune from suit because they were engaged in a discretionary function. The plaintiffs contend, as the majority of this Court held in its original opinion, that there was substantial evidence that the conduct of Shoemaker, Lamon, and Scott violated clearly established statutory rights of which a reasonable person would have known. They argue that it was mandatory that the railroad crossing signal support be of a suitable breakaway or yielding design, as required by specific Highway Department regulations and procedures, and that a jury should be permitted to determine whether they were, in fact, negligent in the *831 performance of their duties.[1] The plaintiffs say that the evidence shows that for more than eight years preceding the accident made the basis of this suit, the railroad crossing signal was surrounded by rails that did not break away and would not yield; that the evidence shows that Shoemaker, Lamon, and Scott knew of these rails; that it could be reasonably inferred that they knew that rails used to support the weight of trains would not break away or yield when hit by an automobile; and that this constituted an extremely dangerous condition that could cause serious harm to motorists. We do not think that the evidence presented here would subject the defendant state officials to tort liability.
The law of this State is clear that the State cannot be sued. Section 14 of the Alabama Constitution specifically so provides. Immunity also exists for a state officer or employee who has not exceeded his or her authority, but has merely negligently performed a statutory duty while acting pursuant to statutory authority. Gill v. Sewell, 356 So.2d 1196 (Ala.1978). Likewise, consistent with the principle stated in Restatement (Second) of Torts, § 895D, "Public Officers" (1974), there is immunity when the state officer or employee commits a tort while engaged in the exercise of a discretionary function. Sellers v. Thompson, 452 So.2d 460 (Ala.1984). In Phillips v. Thomas, 555 So.2d 81, 84 (Ala.1989), Chief Justice Hornsby, writing for the Court, stated:
"This Court has adopted the tort liability rule for public officers found in Restatement (Second) of Torts, which provides as follows:
"`(1) Except as provided in this Section a public officer is not immune from tort liability.
"`(2) A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function.
"`(3) A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if

"`(a) he is immune because engaged in the exercise of a discretionary function,

*832 "`(b) he is privileged and does not exceed or abuse the privilege, or

"`(c) his conduct was not tortious because he was not negligent in the performance of his responsibility.'

"Restatement, § 895D, `Public Officers' (1977) (emphasis added)...."
In determining what is a discretionary function, this Court has recognized certain factors that may be considered, among which are:
"(1) The nature and importance of the function that the officer is performing. Does [the function] involve misfeasance or nonfeasance? If nonfeasance, does it involve the failure to provide governmental services because of allocation elsewhere of available facilities?

"....
"(3) The extent to which the imposition of liability would impair the free exercise of his discretion by the officer. Is this function peculiarly sensitive to the imposition of liability? Would the liability, if it should be imposed, be for a very substantial amount? How far is the mere threat of vexatious suit, with the attendant publicity and the possible need of testifying as to the basis on which the decision was made, likely to affect the exercise of discretion? How likely is the officer to be subjected to frequent accusations for wrongful motives?
"(4) The extent to which the ultimate financial responsibility will fall on the officer. Will his government indemnify him? Is insurance coverage available?

"....
"(7) The availability to the injured party of other remedies and other forms of relief. Is the government or some third party likely to be liable? Could the injured party have avoided the injury by his own action? Could he have insured against it?"
Phillips v. Thomas, 555 So.2d at 84, quoting Restatement (Second) of Torts § 895D "Public Officers" comment f (1977) (emphasis supplied).
Clearly, these factors should be considered in a determining whether the responsibilities of Shoemaker, Lamon, and Scott were discretionary in nature and whether they should be immune from suit.
The first factor is important because each defendant had responsibilities for assessing highway improvement needs and then determining how best to allocate the available resources to meet those needs. Lamon, as district engineer, inspected highways in district one and determined if, and when, maintenance was needed. Scott, as district superintendent, inspected highways, determined if, and when, maintenance was needed, and planned and scheduled maintenance. Shoemaker, as division engineer, supervised all the highway employees in the second division in planning, scheduling, and evaluating maintenance work. Thus, each of these positions required "difficult decision making" and required the employee to decide which of several competing needs to meet first, in view of available monetary and labor resources. See Phillips, 555 So.2d at 85; and Grant v. Davis, 537 So.2d 7, 8 (Ala. 1988).
Factor three quoted from the Restatement, the "threat of vexatious suit[s], with the attendant ... possible need of testifying as to the basis on which the decision was made," which threat would be "likely to affect the exercise of discretion," is also important. There could be a great number of possible hazards in a State Highway Department district or division over which these defendants and others like them would have supervision, and to permit suits such as this would, without question, affect those officials in the exercise of their discretion.
Factor four is the cost of insurance coverage, not only of Highway Department employees but of other state employees engaged in making discretionary decisions of a similar nature. Whether such insurance coverage costs are borne by the officials or by the state, this could have serious ramifications in regard to state budgets and the ability of the state to attract and keep employees.
*833 Factor seven calls for a consideration of whether "some third party [is] likely to be liable." This factor is important here because Taylor also sued Vulcan Materials Company and Southern Railway Company.
Furthermore, there is some evidence that Taylor could have avoided any injuries, and could have insured herself and her daughter against this type of accident.
The facts of this case are strikingly similar to those of another case involving a suit against Highway Department officials, Grant v. Davis, 537 So.2d 7 (Ala.1988), in which the plaintiffs were injured when their car slid off the road into a rut or dropoff. The plaintiffs sued various State Highway Department employees, alleging a negligent failure to inspect, maintain, and repair the road. Interestingly, one defendant, Grant, was a state highway district engineer, just as Lamon is here. Another defendant, Gaston, was a state highway district superintendent, just as Scott is here. This Court reversed a trial court's denial of the defendants' motion for a judgment notwithstanding the verdict or for a new trial, and held that the defendants were entitled to discretionary function immunity. In Grant, this Court discussed the difficulty that Highway Department officials have when trying to match competing needs with available resources:
"[Grant and Gaston] must exercise a degree of discretion in the process of ranking various projects by priority. Ideally, the slightest defect would be repaired immediately so that the highways would, at all times, be maintained at the greatest level of safety. Reality, however, poses limitations on the time, manpower, and financial resources available for making the needed repairs. It is under these limitations that the defendants must assess the relative priority to be given the various defects that are discovered, and rank their repair so as to achieve the optimum level of safety possible under all circumstances."
Grant, 537 So.2d at 9. Just as in Grant, the defendants in this case necessarily exercised discretion in determining whether to remove the railway rails surrounding the crossing signal; the exercise of that discretion is the basis of the plaintiffs' complaint. Therefore, discretionary function immunity should be afforded to these defendants, and the summary judgment in their favor was proper.
Based on the foregoing, the judgment of the trial court is due to be affirmed.
APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; 1901748 AFFIRMED; 1901804 AFFIRMED.
SHORES, ADAMS, STEAGALL and KENNEDY, JJ., concur.
ALMON, J., concurs specially.
HOUSTON and INGRAM, JJ., concur in part, dissent in part.
ALMON, Justice (concurring specially).
I agree that the defendants are immune because they were exercising a discretionary function in deciding whether and when to remove the rails, but I do not agree with the full adoption of comment f to § 895D of the Restatement (Second) of Torts. This Court, in Barnes v. Dale, 530 So.2d 770, 784 (Ala.1988), cited that comment as "suggest[ing] the following factors to be considered in determining what is a discretionary function," and then gave a paraphrase of eight factors. Again, in Phillips v. Thomas, 555 So.2d 81, 84 (Ala.1989), the Court quoted the paraphrases found in Barnes. I agree that the first three factors stated in Barnes are pertinent to the decision on discretionary versus ministerial function. I do not necessarily agree that the fourth through eighth factors are pertinent, although some of them may be pertinent in some circumstances. I do not agree with all of the factors expressed in the full quotation from the Restatement comment that is adopted in the majority opinion in this case. For example, the factors "Could the injured party have avoided the injury by his own action?" and "Could he have insured against it?" seem to have no relevance to the question of whether the defendant was performing a discretionary function. The availability to the Taylors of automobile or medical insurance is not relevant *834 to the question of whether the defendants were performing a discretionary function in deciding whether to remove the rails.
This does not strike me as a close case on the question of discretionary function immunity. The only difficulty stems from the Court's reference in its original opinion to cases applying the qualified immunity standard for actions under 42 U.S.C. § 1983. That standard is not applicable in cases such as this, and, even if it were, an allegation of a failure to follow an administrative regulation does not defeat a defense of qualified immunity in a § 1983 action. See Davis v. Scherer, 468 U.S. 183, 193-96, 104 S.Ct. 3012, 3018-20, 82 L.Ed.2d 139 (1984). Furthermore, to the extent that the administrative regulations in question were adopted to comply with Congressional conditions on the receipt of Federal highway funds, see 23 U.S.C. §§ 152(a) and 402, I question whether the adoption of rules for such a purpose could overcome the discretionary function immunity of State officers acting in the line and scope of their authority.
I agree with the majority that Grant v. Davis, 537 So.2d 7 (Ala.1988), is squarely applicable to this case. The rationale therein clearly supports the conclusion that the defendants in this case were performing a discretionary function relative to the removal of the rails. They were therefore immune from liability in a negligence action, and the trial court correctly entered the summary judgment in their favor.
HOUSTON, Justice (concurring in part, dissenting in part).
I vote to affirm the summary judgment for the defendants on the plaintiffs' claim that the defendants were negligent in allowing the placement, installation, or erection of the railroad crossing signal and the rails that protected the signal, as I did when we released our original opinion. However, I dissent as to the other claim.
If four other members of this Court will join me, I will vote to grant absolute immunity to state employees for nonfeasance of their duties as state employees. "Nonfeasance" is defined in Black's Law Dictionary, 1054 (6th ed. 1991), as "[n]onperformance of some act which [a] person is obligated or has responsibility to perform; omission to perform a required duty at all; or, total neglect of duty." However, that is not what the majority of this Court does. The majority of this Court does not even overrule that portion of Finnell v. Pitts, 222 Ala. 290, 132 So. 2 (1930), quoted in the majority opinion, which the Court overruled in the original opinion in this case. I would overrule Finnell v. Pitts and Elmore v. Fields, 153 Ala. 345, 45 So. 66 (1907), the case upon which this Court relied in Finnell.
I do not understand the majority's discretionary function immunity analysis. For example, what do the following factors, set out by the majority, have to do with whether there is a discretionary function:
"Could the injured party have avoided the injury by his own action? Could he have insured against it?"
Is the majority suggesting that the trial court must determine, as a matter of law, whether the plaintiff was contributorily negligent or could have obtained hospital, disability, or life insurance to insure against the accident in determining, as a matter of law, whether the defendants were immune from liability for their negligence because of some discretionary function immunity? Consider this factor:
"The availability to the injured party of other remedies and other forms of relief."
Is the majority suggesting that the trial court must determine, as a matter of law, the liability of other defendants who are not state employees in determining whether the state employee defendants, as a matter of law, were immune from liability for their negligence because of some discretionary function immunity?
These are some of my concerns.
This case is an appeal from a summary judgment. Therefore, we know what our standard of review must be. Reviewing the evidence in the light most favorable to the plaintiffs, the nonmoving parties, I conclude that the evidence shows that for *835 years before the accident made the basis of this suit the defendants knew that nonbreakaway rails surrounded the railroad signal where this accident occurred. It was mandatory for the protection of motorists that the signal support be of a suitable breakaway or yielding design. This was known to the defendants. The defendants did not remove these rails or have them removed. There was no evidence that the failure to do this was caused by a lack of money or manpower. There was no evidence that the removal of these rails had been scheduled but assigned a low priority because of a lack of money or manpower. Clearly, the defendants had the right to remove the rails and had the means of removing them; this is apparent, because they were removed the day after the accident made the basis of this suit. With these facts before it, the majority of this Court holds that these defendants were entitled to discretionary immunity as a matter of law.
Where is the discretion? I asked this question numerous times during oral argument. I was not given a satisfactory answer then. I have not been given a satisfactory answer by the majority opinion or by Justice Almon's special concurrence.
Where is the discretion?
INGRAM, J., concurs.
NOTES
[1] There was evidence presented that the Alabama highway director promulgated the State of Alabama Highway Department Maintenance Manual and Alabama's Manual on Uniform Traffic Control Devices ("MUTCD") in compliance with 23 U.S.C. § 402(a). There was further evidence that the maintenance manual, § 6.5.1, page 6-24, provided that the maintenance and installation of all traffic service features shall conform with the MUTCD.

The maintenance manual, § 6.5, page 6-23, provided:
"Highway signs, pavement markings, delineators, traffic signals, lights, guardrails and other traffic service features are placed on, and along, highways to assist and protect the motorist. Traffic service features are designed for the safety and protection of the drivers and motor vehicles instead of the protection or preservation of a roadway or a structure element."
The MUTCD provided at A-5.04, page A-17:
"Signs should have the maximum practical lateral clearance from the edge of the traveled way for the safety of vehicles who may leave the roadway and strike the sign supports. Advantage should be taken of existing guardrail, overcrossing structures and other conditions to minimize the exposure of sign supports to traffic. Otherwise, breakaway or yielding supports should be used.
"Normally signs should not be closer than six feet from the edge of the shoulder, or if none, twelve feet from the edge of the traveled way, except where physical conditions prevent such placement. Where a raised curb, a guardrail or a paved shoulder is present, a sign should be placed with its nearest edge at least two feet from the face of the curb, guardrail or paved shoulder."
In the MUTCD, at page 5, the following definition appears:
"SHOULDAn advisory condition. Where the word `should' is used, it is considered to be advisable and desirable usage, recommended but not mandatory."
The MUTCD, A-5.05, at page A-17, provided:
"In areas where ground mounted sign supports cannot be sufficiently offset from the pavement edge [`twelve feet from the edge of the traveled way'] sign supports shall be [of] a suitable breakaway or yielding design. Concrete bases for sign supports should be flush with the ground level."
The word "shall" was defined in the MUTCD, at page 5:
"SHALLA mandatory condition. Where certain requirements in the design or application of the device are described with the `shall' stipulation, it is mandatory that these requirements be met."