ENGLAND, Justice.
Harlon Anthony Ward (“Ward”); as father of Anthony Keith Ward, a deceased minor, sued Morgan County and Shelby Contracting Company, Inc. He filed the action pursuant to § 6-5-391, Ala.Code 1975, which allows an action based on the wrongful death of a minor. The minor child was killed in a motor-vehicle accident that occurred while he was driving a vehicle northbound on Indian Hills Road in Morgan County. Ward alleged in his complaint that Morgan County had breached its duty to make its roads safe for the traveling public, by negligently failing to maintain the shoulder of the roadway along Indian Hills Road in a reasonably safe condition and/or by negligently failing to warn the operators of motor vehicles on this roadway of the existence of an unreasonably dangerous condition. The accident that killed Ward’s minor son occurred on October 22, 1995, while the minor was attempting to return from a four-to-six-inch shoulder drop-off to the paved area of Indian Hills Road. Shelby Contracting had performed asphalt resurfacing on Indian Hills Road in August 1994. The trial court entered a summary judgment in favor of Morgan County and made that judgment final pursuant to Rule 54(b), Ala. R. Civ. P. Ward appealed.[1]
In granting Morgan County’s motion for summary judgment, the trial court held that Morgan County owed no duty to Ward’s son to undertake preventive ae-tions or measures because, the court stated, “Morgan County could not reasonably foresee that a motorist exercising due care would be severely injured unless it constructed a higher or wider shoulder or installed warning signs along the portion of Indian Hills Road where the accident in question occurred.” The plaintiff argues on appeal that the trial court erred in ruling that as a matter of law Morgan County owed no duty to his son. We agree that the trial court erred in that regard. We reverse and remand.

Standard of Review

One moving for a summary judgment must make a prima facie showing that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P. The burden then shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. Scott v. Goins, 677 So.2d 1154 (Ala.1996). Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In determining whether the nonmovant presented substantial evidence creating a genuine issue of material fact, we review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Barnett v. Funding Plus of America, Inc., 740 So.2d 1069 (Ala.1999).
I.
Shelby Contracting participated in a bid to resurface various county roads in each district in Morgan County. Beginning in 1988 Shelby Contracting regularly had a crew working within Morgan County on its roads. Shelby Contracting’s only obligation under its contract with Morgan County was to resurface the roads. W.L. *887 Wooten, project manager for Shelby Contracting, testified that Shelby Contracting never rebuilt shoulders on any of its jobs for Morgan County, including the job on Indian Hills Road. He testified that the standard level of drop-off after completion of a project that includes shoulder rebuilding or maintenance is one-quarter inch to three-quarters of an inch.
The Morgan County engineer, Bobby Woodruff, testified that the desired drop-off between the roadway and the shoulder is one inch. Woodruff reviewed the accident site a day after the accident had occurred. He testified that the shoulder drop-off at the site of the accident was 4-6 inches. With regard to the level of shoulder drop-off, Woodruff also testified:
“Q. So you have left the roadway on several occasions?
“A. I have, yes.
“Q. So it is foreseeable that drivers are going to leave the roadway from time to time?
“A. It is a fact, a known fact, that they are going to run off the road.
“Q. For various different reasons?
“A. We don’t know why, a lot of it; we just don’t know. They just run off the road.”
Woodruff testified that drop-offs between three to six inches can create safety concerns or hazards for drivers who have left the roadway and are trying to reenter it. Woodruff had detected a weakening of the shoulder on the west side of Indian Hills Road directly across from the accident site. He attributed the weakening to gravel being washed away during a flood, and he testified that the county had replaced the gravel along the west side between 1994 and 1995. Woodruff also testified that Morgan County did shoulder work after the completion of all contracts it had with the State of Alabama that were federal-aid secondary and state-aid county projects, but that he did not recall instances where the county had performed shoulder work after Shelby Contracting had completed its performance of a resurfacing contract.
Charles Sparkman, who was a Morgan County commissioner at the time of the accident, testified that Shelby Contracting usually laid two inches of asphalt when it resurfaced, and that the two inches of asphalt rolled out to one and one-half inches. Although in August 1994 Shelby Contracting resurfaced the area of Indian Hills Road where the accident occurred, the evidence does not suggest that any shoulder work had been done before the accident or that any warning signs had been displayed.
The plaintiff submitted the affidavit of Archie C. Burnham, Jr., P.E., a licensed engineer and consultant in traffic engineering, in response to Morgan County’s motion for summary judgment.[2] Burnham testified:
“The actual drop-off level at the point Anthony Ward’s vehicle re-entered the roadway was approximately 4.75 inches. In my opinion, the existing drop-off levels at the time of the accident created an unreasonably dangerous condition for the northbound traffic on this section of Indian Hills Road. The unreasonably dangerous drop-off levels caused Mr. Ward to experience extreme difficulty in attempting to re-enter the roadway and caused Mr. Ward to lose control of his vehicle upon re-entry. The unreasonably dangerous drop-off level at the point of re-entry caused his vehicle to travel in a sharp northwest direction across both lanes of travel and into a *888 tree located on the west side of Indian Hills Road.”
“It is undisputed that governmental entities, by virtue of their exclusive authority to maintain and control the roadways[,] are under a common law duty to keep the streets in repair and in a reasonably safe condition for their intended use.” Jefferson County v. Sulzby, 468 So.2d 112, 114 (Ala.1985); see Ala.Code 1975, § 23-1-80.[3] “Since the county can be sued for its negligence, and is exclusively responsible for maintenance and control of its roadways, its standard of care is to keep its streets in a reasonably safe condition for travel, and to remedy defects in the roadway upon receipt of notice.” Id. Notice need not be actual; it may be constructive. Tuscaloosa County v. Barnett, 562 So.2d 166, 168 (Ala.1990).
This case is similar to Peters v. Calhoun County Commission, 669 So.2d 847 (Ala.1995). In that case, a motorist sued the county commission for damages based on injuries he had received in a single-vehicle accident. He alleged that the road on which his accident occurred had recently been resurfaced and the shoulder of that road had not been built up to the level of the roadway; he alleged that the fact that the roadway had been built up created a dangerous condition and that that condition had caused his accident and his injuries. In that case, just as in this case, the trial court held that there was no evidence that the alleged unreasonably dangerous condition of the roadway caused the motorist’s automobile to leave the road and that it was unforeseeable that the motorist’s automobile would leave the road without any explanation as to the cause. We held in Peters that the trial court erred in basing its summary judgment on the lack of evidence demonstrating how the plaintiff had left the roadway, stating: “A jury should decide whether Mr. Peters’s leaving the road, under the circumstances, was so far outside the bounds of reasonable driving as to be unforeseeable by the Commission.” Id. at 850. Morgan County and the amici curiae[4] cite Jones v. General Motors Corp., 557 So.2d 1259 (Ala.1990), as support for their contention that Morgan County owed no duty to Ward’s son because, they say, it was not foreseeable that his vehicle would leave the road. However, “[i]n Jones, this Court equivocated [in its affirmance] — saying that ‘we do not necessarily agree with the trial judge’s “proximate cause” rationale’ set out in the trial court’s judgment.” Peters, 669 So.2d at 851.
Under the facts of this case, reasonable persons could disagree as to whether it was foreseeable that injury or death could result from Morgan County’s failure to repair the shoulder drop-off on Indian Hills Road or to warn of the drop-off level that existed after the resurfacing. The trial court stated in Morgan County’s summary judgment that it was not foreseeable that any part of Anthony Ward’s vehicle would leave the paved portion of the road in an area where the roadway was straight and during daylight hours. This is tantamount to concluding that it is unforeseeable that a driver will leave the road in an attempt to avoid an object, to avoid a collision with another vehicle, or as a result of simple inadvertence — all of these things, in fact, can happen on a straight road during daylight hours. Why Anthony Ward’s vehicle left the road is not the central issue in this case, given the fact that the complaint alleges that his death *889 occurred because the low shoulder drop-off prevented him from being able to return to the road safely. Moreover, the county’s own engineer testified that it was “a known fact” that vehicles leave the road for various reasons.
Ward presented substantial evidence from which a jury could conclude that the county knew or should have known that a member of the motoring public might experience difficulty returning a vehicle to the paved portion of Indian Hills Road and might as a result of that difficulty, caused by an unreasonably dangerous shoulder-drop-off level or caused by a failure to warn motorists of that danger, be involved in an accident.
II.
Section 11-1-2, Ala.Code 1975, states: “Every county is a body corporate, with power to sue or be sued in any court of record.” Morgan County argues that it can have no liability for Ward’s claims because, it says, any Morgan County employees responsible for maintenance and repair of the roadway and shoulder would have discretionary-function immunity. In support of this argument, the County cites Grant v. Davis, 587 So.2d 7 (Ala.1988)(Alabama State Highway Department district engineer and superintendent were entitled to discretionary-function immunity in an action filed by a plaintiff whose car slid off the road into a rut or drop-off); Taylor v. Shoemaker, 605 So.2d 828 (Ala.1992) (State Highway Department engineers and superintendent were entitled to discretionary-function immunity from plaintiffs’ claims for damages for injuries they received when the automobile they occupied collided with railroad rails that had been embedded in concrete and that extended several feet vertically into the air to protect a signal at a railroad crossing); McDuffie v. Roscoe, 679 So.2d 641 (Ala.1996) (State Department of Transportation employees were entitled to discretionary-function immunity in an action in which the plaintiff alleged that the resurfacing of a public roadway had caused a dangerous drop-off to exist and the Department’s employees had failed to post signs warning of the condition); and McCluskey v. McCraw, 672 So.2d 805 (Ala.Civ.App.1995) (county engineer had discretionary-function immunity against claims alleging that he had failed to ensure that a bridge was reasonably safe for travel). In all of these cases, discretionary-function immunity was extended to state and county employees. However, Ward has not named any county employees as defendants in this action. We have held that “ § 11-1-2 allows suits against counties, and their governing bodies — the commissions and commissioners— in their official, but not in their individual capacity in tort irrespective of any corporate-governmental function distinction.” Cook v. County of St. Clair, 384 So.2d 1, 5 (Ala.1980). In Cook, this Court held that a plaintiff could maintain an action against St. Clair County, its county commission, and its county commissioners in their official capacities, based on the deaths of his wife and son caused by injuries they had sustained in a motor-vehicle accident that had occurred while the wife and son were riding as passengers in a pickup truck that was traveling along a road that the plaintiff claimed the County had improperly maintained. Discretionary-function immunity is not an issue in this present case.
The summary judgment for Morgan County is reversed, and this case is remanded for a trial on the merits.
REVERSED AND REMANDED.
HOOPER, C.J., and HOUSTON, COOK, LYONS, BROWN, and JOHNSTONE, JJ., concur.
MADDOX and SEE, JJ., dissent.

. Shelby Contracting also filed a motion for summary judgment, but the trial court denied its motion. It is not a party to this appeal.

. Morgan County contends that Burnham's affidavit was submitted only in opposition to Shelby Contracting’s motion for summary judgment (see note 1). However, the record shows that Ward filed an "Evidentiary Submission in Support of Plaintiff’s Response to Defendants' Motions for Summary Judgment"; that "evidentiary submission” listed Burnham’s affidavit as one of four evidentiary materials to be considered along with Ward’s response to the motions.

. Morgan County contends that it cannot be held liable because, it says, any of its employees responsible for maintenance and repair of the roadways and shoulders would have discretionary-function immunity. Discretionary-function immunity could possibly be a defense for certain county employees. See Taylor v. Shoemaker, 605 So.2d 828 (Ala.1992); Grant v. Davis, 537 So.2d 7 (Ala.1988). However, it would not absolve Morgan County of liability for failing to maintain its roads in a reasonably safe condition.

. Five other counties and the Association of County Commissions have been permitted to appear in this appeal as amici curiae.