38 So.3d 41 (2009)
Ex parte M. Barnett LAWLEY et al.
(In re Jerald Drummond et al. v. M. Barnett Lawley et al.).
1080175.
Supreme Court of Alabama.
November 6, 2009.
*43 William A. Gunter, gen. counsel, Department of Conservation and Natural Resources, Montgomery, for petitioners.
W. Lloyd Copeland and Richard H. Taylor of Taylor-Martino, P.C., Mobile; Shelley H. Milam of Milam & Milam, Fairhope; and Michael G. Strickland of Strickland & Kendall, LLC, Montgomery, for respondents.
PER CURIAM.
M. Barnett Lawley, the commissioner of the Alabama Department of Conservation and Natural Resources ("the Department"); Terry Boyd, the chief of engineering for the Department; Hugh Branyon, the superintendent of Gulf State Park ("the Park"); and Michael Guin, the park manager and pier manager of the Park ("the petitioners"), petition this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order denying their motion for a judgment on the pleadings or to dismiss the complaint filed by Jerald Drummond, Jerald Drummond, Jr., Eugene Drummond, Jordan Kitchens, and Michael Combs ("the plaintiffs") alleging negligence and wantonness against the petitioners in their individual capacities. We deny the petition.

I. Facts and Procedural History
Lawley's statutory duties under Alabama law are to "maintain, supervise, operate, and control all state parks," as well as to "preserve, improve, protect and maintain all parks," which includes the Park. §§ 9-2-2(3) and 9-2-10, Ala.Code 1975. The remaining petitioners are charged with these duties by designation. See § 9-2-6, Ala.Code 1975. The Alabama State Pier ("the pier") is located in the Park; it originally extended 825 feet into the waters of the Gulf of Mexico. When the pier was built, in accordance with provisions of the Code of Federal Regulations, the State of Alabama marked the pier with a system of lights as approved by the United States Coast Guard for navigation purposes. In early September 2004, much of the pier was destroyed by Hurricane Ivan, leaving little except a hexagonal structure at the seaward terminus of the pier. The lighting system was also destroyed by Hurricane Ivan and was not replaced until after the accident that precipitated the underlying action.
According to the complaint, on November 1, 2007, the plaintiffs were passengers on a 23-foot motorboat returning during the nighttime hours from a fishing trip in the Gulf of Mexico. In the darkness, the motorboat collided with the remnants of the pier, which was not lighted or marked in any way. As a result of the collision, the plaintiffs allegedly suffered severe physical injuries, the most serious being sustained by Jerald Drummond, Jr., a minor and the son of Jerald Drummond, who *44 sustained acute head trauma and near drowning, which resulted in permanent brain damage and mental incapacity.
On April 12, 2008, the plaintiffs filed a complaint in the Montgomery Circuit Court against the petitioners in their individual capacities. The complaint alleged claims of negligence and wantonness based upon the petitioners' failure to reinstall lights on the remnants of the pier remaining in the Gulf of Mexico following Hurricane Ivan, as the plaintiffs alleged the petitioners were required to do by certain federal regulations. According to the plaintiffs, this failure resulted in their not being warned of the obstruction to navigation in the water at nighttime, causing the collision. The complaint explicitly requested compensatory damages and punitive damages from the petitioners in their individual capacities.
On June 9, 2008, the petitioners filed a motion for a judgment on the pleadings or, in the alternative, to dismiss the complaint on the basis of State immunity and State-agent immunity. Following a hearing, the trial court denied the motion on October 2, 2008. The petitioners then petitioned this Court for a writ of mandamus on the ground that they are immune from legal action, based either on State immunity, also known as "absolute" immunity, under Art. I, § 14, Ala. Const.1901, or on the doctrine of State-agent immunity as articulated in Ex parte Cranman, 792 So.2d 392 (Ala.2000).
II. Standard of Review
"`"The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [it] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [it] may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."'"
Ex parte Troy Univ., 961 So.2d 105, 108 (Ala.2006) (quoting Knox v. Western World Ins. Co., 893 So.2d 321, 322 (Ala.2004), quoting in turn Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993)). "A ruling on a motion to dismiss is reviewed without a presumption of correctness." Newman v. Savas, 878 So.2d 1147, 1148-49 (Ala.2003).
"When a motion for judgment on the pleadings is made by a party, `the trial court reviews the pleadings filed in the case and, if the pleadings show that no genuine issue of material fact is presented, the trial court will enter a judgment for the party entitled to a judgment according to the law.' B.K.W. Enters., Inc. v. Tractor & Equip. Co., 603 So.2d 989, 991 (Ala.1992). See also Deaton, Inc. v. Monroe, 762 So.2d 840 (Ala.2000). A judgment on the pleadings is subject to a de novo review. Harden v. Ritter, 710 So.2d 1254, 1255 (Ala.Civ.App.1997). A court reviewing a judgment on the pleadings accepts the facts stated in the complaint as true and views them in the light most favorable to the nonmoving party. Id. at 1255-56."
Universal Underwriters Ins. Co. v. Thompson, 776 So.2d 81, 82-83 (Ala.2000).
"It is well established that mandamus will lie to compel a dismissal of claim that is barred by the doctrine of sovereign immunity." Ex parte Blankenship, 893 So.2d 303, 305 (Ala.2004).
"A writ of mandamus is a
"`drastic and extraordinary writ that will be issued only when there is: 1) a clear legal right in the petitioner to the *45 order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.'"
Ex parte Wood, 852 So.2d 705, 708 (Ala. 2002) (quoting Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)).

III. Analysis

A. State Immunity
The petitioners first contend that the trial court lacks subject-matter jurisdiction to entertain this action because, they say, this action is, in effect, an action against the State. Article I, § 14, Ala. Const. 1901, states that "the State of Alabama shall never be made a defendant in any court of law or equity."
"`[I]f an action is an action against the State within the meaning of § 14, such a case "presents a question of subject-matter jurisdiction, which cannot be waived or conferred by consent."' Haley v. Barbour County, 885 So.2d 783, 788 (Ala.2004) (quoting Patterson v. Gladwin Corp., 835 So.2d 137, 142-43 (Ala.2002)). `Therefore, a court's failure to dismiss a case for lack of subject-matter jurisdiction based on sovereign immunity may properly be addressed by a petition for the writ of mandamus.' Ex parte Alabama Dep't of Mental Health & Retardation, 837 So.2d 808, 810-11 (Ala.2002)."
Ex parte Davis, 930 So.2d 497, 499-500 (Ala.2005).
What we have come to refer to as "State immunity" or "absolute immunity" bars claims, among other things, for monetary damages against: the State, a State agency, and a State official or employee sued in his or her official capacity as an agent of the State. See Davis, 930 So.2d at 500. State immunity also may bar an action against certain State officials sued in their individual capacity. See Phillips v. Thomas, 555 So.2d 81, 83 (Ala. 1989).
"Whether immunity serves as a defense to an action against a state officer or employee sued in his individual capacity depends upon the degree to which the action involves a State interest. `Our cases adhere to the view that the State has an interest such as will prohibit suit against the State official or employee where the action is, in effect, against the State.' Taylor v. Troy State Univ., 437 So.2d 472, 474 (Ala.1983).
"When determining whether a State interest in an action against a state official or employee in his or her individual capacity is sufficient to trigger the immunity granted by § 14, our cases distinguish between the standards applied to those state agents or employees whose positions exist by virtue of legislative pronouncement and those who serve as the constitutional officers of this State. We have held that State-agent immunity may bar an action against a state agent or employee under the principles announced in Ex parte Cranman, 792 So.2d 392 (Ala.2000). See Ex parte Butts, 775 So.2d 173 (Ala.2000) (adopting, by majority, the Cranman restatement of the rule governing State-agent immunity). However, this Court has consistently held that a claim for monetary damages made against a constitutional officer in the officer's individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment. See, e.g., Boshell v. Walker County Sheriff, 598 So.2d 843, 844 (Ala.1992) (`a sheriff, as an executive officer of the State of Alabama, is immune, under Article I, § 14, of the Alabama *46 Constitution, from suit based on state law claims arising out of the execution of the duties of his office')."
Davis, 930 So.2d at 500-01 (emphasis added). Furthermore, "`[a]n action is one against the [S]tate when a favorable result for the plaintiff would directly affect a contract or property right of the State, or would result in the plaintiff's recovery of money from the [S]tate.'" Alabama Dep't of Transp. v. Harbert Int'l, Inc., 990 So.2d 831, 840 (Ala.2008) (quoting Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala.2004)) (emphasis omitted).
The petitioners are statutory, not constitutional, officers. The claims against them are explicitly asserted against them in their individual capacities. The action does not involve a contract or property right of the State, and the plaintiffs do not seek damages from the State, directly or indirectly. Consequently, this is not an action that implicates State immunity, and the petitioners are not entitled to a dismissal on that basis.

B. State-Agent Immunity
The petitioners' assert as another ground for their petition that the claims against them are due to be dismissed because, they say, they are entitled to State-agent immunity. This Court addressed the parameters of State-agent immunity in Ex parte Cranman, 792 So.2d 392 (Ala. 2000) (plurality opinion), and adopted the Cranman test later the same year in Ex parte Butts, 775 So.2d 173 (Ala.2000). In Cranman, this Court stated:
"A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
"(1) formulating plans, policies, or designs; or
"(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
"(a) making administrative adjudications;
"(b) allocating resources;
"(c) negotiating contracts;
"(d) hiring, firing, transferring, assigning, or supervising personnel; or
"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, *47 beyond his or her authority, or under a mistaken interpretation of the law."
Cranman, 792 So.2d at 405.
In determining whether State-agent immunity applies in a particular case, it must be kept in mind that
"`[t]his Court has established a "burden-shifting" process when a party raises the defense of State-agent immunity.' Ex parte Estate of Reynolds, 946 So.2d 450, 452 (Ala.2006). A State agent asserting State-agent immunity `bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity.' 946 So.2d at 452. Should the State agent make such a showing, the burden then shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in Cranman is applicable."
Ex parte Kennedy, 992 So.2d 1276, 1282-83 (Ala.2008).
The petitioners have been sued based on actions involving their duties in the Department. The conduct that is the basis of the plaintiffs' claims is the petitioners' failure to maintain or to reinstall a light system on the remnants of the pier, actions that could be related either to "formulating plans, policies, or designs" or "exercising... judgment in the administration of a department or agency of government, including, but not limited to ... allocating resources." Cranman, 792 So.2d at 405. We need not address this issue further, however, because the plaintiffs concede that the petitioners meet the initial qualification of showing that they were engaged in a function that would entitle them to State-agent immunity.
The plaintiffs contend, however, that the petitioners' conduct falls within the exception to State-agent immunity that exists when a "State agent acts ... beyond his or her authority." Cranman, 792 So.2d at 405. More specifically, in this case, the plaintiffs rely on the principle articulated previously by this Court that a State agent acts beyond his or her authority when the agent fails "`to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.'" Giambrone v. Douglas, 874 So.2d 1046, 1052 (Ala.2003) (quoting Ex parte Butts, 775 So.2d at 178).
The plaintiffs maintain that the petitioners acted beyond their authority by failing to discharge their duties with regard to maintaining navigational aids as detailed in the Code of Federal Regulations. In their petition to this Court, however, the petitioners contend that the regulations do not "give guidance to an owner of a ... structure as to whether the regulations would continue to apply to a structure destroyed by a hurricane or other natural disaster nor what the owner's responsibilities would be if the regulations did apply post-destruction." On this basis, the petitioners argue that the federal regulations are not sufficiently detailed to qualify as a basis for the exception to State-agent immunity urged by the plaintiffs.
The federal regulations at issue here require that before a person or entity places a structure in the navigable waters of the United States, the owner or operator of the structure must "apply for Coast Guard authorization to mark the structure"; such markings must be approved by "the Commander of the Coast Guard District" in which the structure is to be located. 33 C.F.R. §§ 64.21 and 66.01-5. "Markings" are "the lights and other signals placed on or near structures ... for the protection of navigation." 33 C.F.R. § 64.06. Thus, when the State of Alabama placed the pier off the shore of the Park in the waters of the Gulf of Mexico, it was required to equip the structure with lights that had been approved by the Coast *48 Guard. Both parties concede that the lighting system on the pier had the requisite approval before much of the pier was destroyed by Hurricane Ivan in 2004. The federal regulations require that "[m]arkings determined to be required shall be established and maintained until ... [t]he structure is removed." 33 C.F.R. § 64.23.
As mentioned above, Hurricane Ivan destroyed much of the pier and all the lighting system on the pier. The federal regulations require "the marking of structures, sunken vessels and other obstructions for the protection of maritime navigation." 33 C.F.R. § 64.01. In this context, "structures" are "any fixed or floating obstruction, intentionally placed in the water, which may interfere with or restrict maritime navigation," and "obstructions" are "anything that restricts, endangers, or interferes with navigation." 33 C.F.R. § 64.06. The plaintiffs contendand the petitioners do not disputethat the remnants of the pier qualify as a "structure." Like the original lights, the markings for structures and obstructions must be "approved by the appropriate District Commander [of the United States Coast Guard]." 33 C.F.R. § 64.13. The regulations stipulate that "[m]arkings shall be maintained until ... [the] obstruction is removed." 33 C.F.R. § 64.16.
The plaintiffs contend that these federal regulations, taken together, implicate the "beyond-authority" exception to State-agent immunity because the regulations explicitly command that lights must be present on an obstruction in the navigable waters in the United States and that those lights cannot be removed without the approval of the Coast Guard.[1] We agree with the plaintiffs. We reject the argument presented by the petitioners that these regulations do not sufficiently guide the actions of an owner of a structure under the circumstances presented and thus are not sufficiently detailed to serve as a basis for application of the exception recognized in Cranman for acts beyond the authority of the State official or employee.
In Grant v. Davis, 537 So.2d 7, 9 (Ala. 1988), this Court addressed the availability of what was then known as "discretionary-function" immunity in a failure-to-maintain action against employees of the State Highway Department (now the Alabama Department of Transportation). The Court held:
"The evidence adduced at trial established that once the defendants determine that repairs are needed, they share the responsibility of ranking the various projects, based on factors that include the ones enumerated above, viz., the type of defect, the particular road in question, and the economic resources and manpower available. While the defendants' duty to maintain and repair the roads is an affirmative duty, they must exercise a degree of discretion in the process of ranking various projects by priority. Ideally, the slightest defect would be repaired immediately so that the highways would, at all times, be maintained at the greatest level of safety. Reality, however, poses limitations on the time, manpower, and financial resources available for making the needed repairs. It is under these limitations that the defendants must assess the relative priority to be given the various *49 defects that are discovered, and rank their repair so as to achieve the optimum level of safety possible under all circumstances. While the Department's `Field Operations Manual' provides criteria by which these decisions are to be made, in the final analysis a significant degree of discretion is left to the defendants in their exercise of this particular function. We find that the appellants' duties associated with the repair and maintenance function substantially partake of planning level activities involving the exercise of discretion, and the defendants are therefore entitled to substantive immunity as a matter of law on plaintiffs' claims for failure to maintain and repair. Thus, the defendants' motion for JNOV [now called a judgment as a matter of law] should have been granted as to those claims."
Grant has been cited with approval in the post-Cranman era. See, e.g., Ex parte Estate of Reynolds, 946 So.2d 450 (Ala.2006).
Notwithstanding the federal regulations at issue, the petitioners argue that their acts and omissions in relation to the pier entail, among other things, the formulation of plans and policies and the exercise of judgment in the administration of the Department involving the allocation of resources. Unlike in Grant and Reynolds, we have here no materials before us that support this argument. Instead, all that is before us in this case is a request for relief from the denial by the trial court of a motion to dismiss for failure to state a claim or for a judgment on the pleadings. In regard to this motion, the trial court was presented with little more than (a) the substance of the federal regulations discussed in this opinion and (b) the fact of the three-year delay between the partial destruction of the pier by Hurricane Ivan and the accident giving rise to this action. Given the materials presented to the trial court and to this Court, we cannot conclude that the trial court erred in refusing, on the ground of State immunity or State-agent immunity, to dismiss the complaint for failure to state a claim or to enter a judgment on the pleadings; for all that appears, the case before it was one of a simple disregard of a federal mandate.
We therefore deny the petition.
PETITION DENIED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., concurs specially.
MURDOCK, Justice (concurring specially).
The only question presented in this petition for the writ of mandamus is whether the exception to State-agent immunity for acts of a State employee that are "`beyond his or her authority,'" Ex parte Butts, 775 So.2d 173, 177-78 (Ala.2000) (quoting Ex parte Cranman, 792 So.2d 392, 405 (Ala. 2000)), is applicable in this case. We do not have before us any question as to which of the categories of immunity identified in Cranman is applicable in the first instancethe plaintiffs concede that the petitioners were engaged in a function that otherwise would entitle them to State-agent immunityor any question as to whether any other exception to State-agent immunity is applicable.
I am concerned that recent applications by this Court of the "beyond-authority" exception to State-agent immunity have transformed that exception into a mechanism for reopening the door to actions against State employees that are based on conduct that falls within one of the categories of State-agent immunity articulated in Cranman, "`even when [that] conduct ... is committed in the line and scope of ... employment.'" Ex parte Watson, 37 *50 So.3d 752, 767 (Ala.2009) (Murdock, J., concurring in part and dissenting in part (quoting Cranman, 792 So.2d at 402; emphasis omitted)). My concerns are explained in more detail in my special writing in Watson and need not be repeated here.
The foregoing concerns are not voiced in the petition before us, however, and, even if they were, our review here of the denial of a motion to dismiss for failure to state a claim or for a judgment on the pleadings based on limited factual development would be difficult at best. Similarly, the petition does not argue that the beyond-authority exception was not applicable to any particular petitioner on the ground that the subject regulations are not directed specifically to him. Compare Giambrone v. Douglas, 874 So.2d 1046 (Ala. 2003); Howard v. City of Atmore, 887 So.2d 201, 203 (Ala.2003); Gowens v. Tys. S., 948 So.2d 513, 522 (Ala.2006). Because I cannot conclude that the trial court erred in denying the petitioners' motion to dismiss for failure to state a claim or for a judgment on the pleadings, given the issues presented by that motion, I concur in the main opinion.
NOTES
[1] As the plaintiffs observe, the regulations need not be in the form of an actual checklist to demonstrate that a State agent has acted beyond his or her authority. Indeed, in two of the cases commonly cited for this exception to State-agent immunityGiambrone v. Douglas, supra, and Howard v. City of Atmore, 887 So.2d 201 (Ala.2003)the rules at issue were not in the form of a checklist.