The issue in this appeal is whether the trial court erred in directing a verdict in favor of the defendant, Jefferson County (the "County") on the ground that the plaintiff, John Springer, had failed to present substantial evidence that any negligence of Jefferson County proximately caused his injury.
We find that Springer presented sufficient evidence of proximate causation to warrant submitting his case to the jury. We, therefore, must reverse the trial court's judgment and remand the cause for a new trial.
On December 20, 1987, Springer drove his wife to work at a nursing home near Tarrant, Alabama. As he proceeded down Black Creek Road toward the nursing home, Springer noticed that an automobile on the opposite side of the road had wrecked and was lying overturned in a ditch beside the road. After dropping his wife off at work, Springer stopped at the accident scene and tried to assist the two occupants of the overturned car. While *Page 1383 
Springer was down in the ditch trying to help the accident victims, James Terrell, driving a small pickup truck, came around a nearby curve in Black Creek Road, ran into the ditch, and struck Springer, pinning him underneath the truck. Springer was seriously injured. Springer sued Terrell, alleging that Terrell had negligently and/or wantonly operated his vehicle. Springer later added the County and the City of Tarrant as defendants, alleging that they had negligently designed and maintained Black Creek Road. Springer settled with Terrell and the City of Tarrant before trial, and the case proceeded to trial against the County alone. After Springer presented his case-in-chief, the County moved for a directed verdict. It is apparent from the record and the parties' briefs that the trial court granted the County's motion because the court felt that Springer's evidence was insufficient to prove that any negligent act of the County was the proximate cause of Springer's injury. Springer appealed to this Court.
A motion for directed verdict is a procedural device by which one party tests the sufficiency of the other party's evidence. See, Rule 50(a), Ala.R.Civ.P.; Alabama Power Co. v. Williams,570 So.2d 589 (Ala. 1990); John R. Cowley Bros., Inc. v.Brown, 569 So.2d 375, 376 (Ala. 1990); J. Hoffman S. Guin,Alabama Civil Procedure § 8.37 (1990). The ultimate question, of course, is whether the nonmovant has presented sufficient evidence to allow submission of the case or issue to the jury for a factual resolution. Hoffman Guin, supra, at § 8.37. For actions filed after June 11, 1987, the standard of review applicable to a motion for directed verdict is the "substantial evidence rule." See, § 12-21-12(a), Ala. Code 1975; Koch v.State Farm Fire Cas. Co., 565 So.2d 226, 228 (Ala. 1990). Thus, in an action filed after June 11, 1987, a nonmovant must present "substantial evidence" supporting each element of his cause of action or defense to withstand a movant's motion for a directed verdict. Id. However, when the parties on appeal fail to contest or address every element of the nonmovant's cause of action or defense, this Court will consider only the contested or addressed elements because, "This [C]ourt cannot be put to a search for errors not specifically assigned and argued."Robison v. Robison, 280 Ala. 412, 413, 194 So.2d 568, 569
(1967). Because of that rule, we will consider only the sufficiency of the evidence as to the element of proximate cause, because only that element has been briefed and argued.[1]
"Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.of Florida, 547 So.2d 870, 871 (Ala. 1989); see Ala. Code 1975, §12-21-12.
Also, we note that in reviewing a directed verdict, we must view all the evidence in a light most favorable to the nonmovant and must entertain such reasonable inferences from the evidence as the jury would be free to draw. Williams v.Allstate Insurance Co., 591 So.2d 38 (Ala. 1991); Bailey v.Avera, 560 So.2d 1038 (Ala. 1990).
For a proper understanding of this case, explanations of four legal principles are necessary: factual causation, legal or proximate causation, intervening or superseding intervening cause, and concurrent tort-feasor liability. Factual causation, or "but for" causation, is that part of causation analysis that asks if the complained-of injury or damage would have occurred but for the act or omission of the defendant. W. Keeton, D. Dobbs, R. Keeton, D. Owen, Prosser and Keeton On Torts § 41 (5th ed. 1984). Proximate or legal causation is that part of causation analysis that asks if "the act for which the [defendant] is responsible [is] of such a *Page 1384 
nature that courts of law will recognize it as the [cause] of the injury." General Motors Corp. v. Edwards, 482 So.2d 1176,1194 (Ala. 1985). In Alabama, the issue of proximate causation hinges on foreseeability and is intertwined, analytically, with the concept of intervening cause. See, id. Intervening cause is a subsequent act or omission by a third party that is both unforeseeable and "sufficient in and of itself to have been the sole 'cause in fact' of the injury [or damage]." Id. at 1195. Concurrent tort-feasor liability is simply the idea that "an injury may have several concurrent proximate causes, including the actions of two or more tortfeasors, neither of whose action was sufficient in and of itself to produce the injury, who act, either together or independently, to produce it." Id. Because of the concept of joint and several liability, a defendant in a concurrent liability case is precluded from arguing the negligence of the other actor as a defense, unless the other actor's act or omission is an intervening cause. Id. Thus, based on these four concepts, causation analysis, at least in a concurrent liability case, essentially consists of a showing of factual causation and foreseeability.
If Springer offered substantial evidence that the County negligently acted or omitted to act and that its negligent act or omission factually caused his injury, and that his injury was reasonably foreseeable by the County (that is, that the acts or omissions of Terrell were not an intervening or unforeseeable cause), then he was entitled to present his case to the jury. After a careful review of the evidence, we are convinced that Springer offered substantial evidence of both factual causation and foreseeability, and that he was entitled to have a jury decide those fact questions.
As to factual causation, Springer presented the testimony of a traffic and highway engineering expert, Robert Kolar, which, at least, when viewed in a light most favorable to Springer, as the nonmovant, would support that element of his cause of action. Kolar testified that there was an insufficient "clear zone "[2] and too great a variation in the superelevation[3] in the curve on Black Creek Road that is involved here, and that those defects would cause a person operating a vehicle rounding the curve to lose control and go into the adjacent ditch. Kolar further testified that a guardrail would have deflected Terrell's vehicle and kept it from going into the ditch and, thus, from striking Springer. We are convinced that this testimony amounts to "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. Thus, at least when viewed in a light most favorable to the nonmovant, the evidence Springer presented amounted to substantial evidence of factual causation.
As to foreseeability, Springer presented testimony from Officer Steve Barlow of the Tarrant Police Department and a series of traffic accident reports, at least two of which described accidents we deem sufficiently similar to the accident in question to alert the County of potential problems.[4] Officer Barlow testified that he had investigated at least two accidents that had occurred prior to the accident in question and that had occurred on or very near the curve in Black Creek Road. He specifically testified *Page 1385 
that the road at the time of these prior accidents was wet, and that the drivers of the vehicles involved lost control in the curve and crashed into nearby objects. One of the accident reports tends to show that a driver lost control in the curve on Black Creek Road and ran into a nearby creek. The other accident report tends to show that a driver lost control in the curve and ran into a nearby ditch. It was also established that the County received these accident reports from the City of Tarrant. Thus, we conclude that the testimony of Barlow, along with the accident reports, and with other testimony,[5] when viewed in a light most favorable to the nonmovant, would amount to substantial evidence of foreseeability that an accident of this nature would occur.
We recognize that in Jones v. General Motors Corp.,557 So.2d 1259 (Ala. 1990), this Court affirmed a summary judgment in favor of a county in a case in which the plaintiff had alleged that the county had negligently designed, maintained, and constructed a bridge and guardrail. We also recognize that theJones case required the application of the "scintilla" rule, and that in this case we are required to apply the "substantial evidence" rule. Nevertheless, we believe that the facts and circumstances of this case are substantially different from those in Jones. Here, there was substantial evidence not only that the roadway was defectively designed and maintained, but that the County had notice of those defects, in that 10 accidents had occurred at the spot over a 3-year period. In fact, the Court noted, based on testimony by Jerry Drake, the County Engineer and the County's expert witness, that "five [accidents] in a year would be considered hazardous," and that "the number [in this case] is ten, and for the purpose of notice, that's notice." (Emphasis added.) In Jones, the County's defense was based, in part, on the fact that the bridge and guardrail involved there "met all design criteria and all construction and state-of-the-art knowledge with respect to bridges and guardrails that existed in 1959."557 So.2d at 1261. We also believe that the evidence of causation is substantially stronger here than in the cases cited by the Court in Jones.
We believe that the plaintiff presented substantial evidence of causation; therefore, we must reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES and KENNEDY, JJ., concur.
HOUSTON, J., concurs in the result.
[1] Officially, the appellant also raised the issue of duty in his brief. However, because the trial court bottomed its directed verdict on causation, and because the appellee addresses only causation, and the appellant addresses only causation in his reply brief, we will address only the sufficiency of the evidence on the causation element.
[2] Kolar defined "clear zone" as "a roadside area which is adjacent to the travel lane which is reasonably flat and free of obstructions and is available for errant vehicles so that they can recover if they go out of control and get back up on the road without having serious consequences." (R-115)
[3] "Superelevation" is defined as "the vertical distance between the heights of inner and outer edges of highway pavement" or "banking." Webster's Ninth New Collegiate Dictionary, at 1184 (1986).
[4] We note that Alabama law requires proof of a similarity of conditions between the place of prior accidents and the place of the accident in question. C. Gamble, McElroy's AlabamaEvidence, § 83.01(3) (4th ed., 1991). This similarity can be presumed, however, when there exists a temporal proximity between the accidents and a relatively permanent or unchanging place or situs of the accidents. See, id. Here, the curve in Black Creek Road is relatively permanent and unchanging and there is a temporal proximity between the accident in question and the prior accidents.
[5] There seems to be little question that the County had notice of the unsafe condition. During the trial, the following colloquy occurred between the Court and counsel:
 "The Court: The number I have got down here on my notes is that they have received [notice of] ten [accidents] . . . that had occurred over a three-year period.
 "Mr. Adams: I think your notes are more accurate than mine, Judge.
 "The Court: Well, I wrote that down and he [Jerry Drake, the County Engineer] said that that would warrant an investigation and that they considered five in a year as being hazardous. That's the note I wrote down. Is that your memory?
"Mr. Wagner: That's my memory, your Honor.
 "The Court: — as to what happened? I don't [know] what else you are wanting to show except — I mean the number of it is ten, and for the purpose of notice, that's notice. As far as — my understanding as far as going into the individual facts of the ten, you would have to go through them and make sure that there are similar types of wrecks as far as this case goes, but as far as notice, the fact that there have been ten now I thought was already in evidence."