Charles Peters appeals from a summary judgment for the Calhoun County Commission[1] in his action seeking damages based on an allegation that the Commission had negligently designed, maintained, and repaired the roadway upon which Mr. Peters was injured in an automobile accident. The issue is whether the circuit judge erred in holding that Mr. Peters had presented no substantial evidence that any negligence on the part of the Commission proximately caused Mr. Peters's injuries. The Association of County Commissions of Alabama submitted an appellate brief as amicus curiae on behalf of the Commission.
On October 28, 1988, at approximately 3:30 a.m., Mr. Peters was involved in a single-car accident along Coldwater Road in Calhoun County. Mr. Peters says he remembers leaving home just before 3:00 a.m. to go to work and then waking up in a hospital six weeks later, but he says he has no recollection of the accident. No eyewitnesses were discovered. Coldwater Road had been resurfaced in August 1988; as of October 28 no work had been undertaken to bring the road shoulders up to the level of the road surface at the place where this accident occurred and as of that date no edge stripes had been painted on the road at the place of the accident. Before that date, the County had posted four "Soft Shoulder" signs and four "Low Shoulder" signs along Coldwater Road. Mr. Peters was very familiar with Coldwater Road, having traveled the roadway to and from work hundreds of times.
Mr. Peters's complaint against the Commission alleges that it negligently designed, maintained, and repaired the roadway where his accident occurred, and that the negligence consisted of allowing the depth of the road shoulders, or the level of edge drop-off, to exceed a reasonably safe level. Mr. Peters's theory is that, for whatever reason, his car left the road and that, because of the excessive drop-off to the shoulder, he lost control when he attempted to steer back onto the road surface. Mr. Peters predicates the Commission's liability upon the argument that the Commission negligently failed to perform necessary shoulder work and that its negligence in that regard prevented him from safely maneuvering back onto Coldwater Road.
On February 6, 1992, the Commission filed a motion for summary judgment, arguing that there was no evidence that the Commission had breached a duty owed to Mr. Peters and no evidence that any negligence on the part of the Commission in any way proximately caused or contributed to Mr. Peters's accident. On March 2, 1993, the circuit court denied the motion for summary judgment. On January 31, 1994, the Commission filed a second motion for summary judgment, arguing that there was no substantial evidence that any defect in the roadway was the proximate cause of Mr. Peters's accident. On February 22, 1994, the circuit court granted this second motion for summary judgment. The circuit judge's final order bases the summary judgment upon the following holdings: that there was no evidence that the alleged unreasonably dangerous condition of the roadway caused Mr. Peters's automobile to leave the traveled portion of the road; that it was not foreseeable that Mr. Peters's automobile would leave the traveled portion of the road without any explanation as to cause; and that, even if the Commission had acted negligently, there was no evidence indicating a causal connection between its negligence and Mr. Peters's accident.
One of the elements of a negligence action is a causal relationship between the defendant's conduct and the plaintiff's injury. Bowden v. E. Ray Watson Co., 587 So.2d 944,946 (Ala. 1991) (citing Thompson v. Lee, 439 So.2d 113 (Ala. 1983)). We interpret all the grounds stated in the circuit judge's summary judgment order as relating to the issue of causation. Because each ground, if valid, would independently support the judgment, we will discuss the three grounds individually. *Page 850 
The first ground stated by the trial judge is that there is no evidence that the allegedly unreasonable condition of the road, an excessive shoulder drop-off, caused Mr. Peters to leave the traveled portion of the road. We find that the circuit court erred in basing the summary judgment upon this ground, because Mr. Peters readily concedes that he does not know why his tires dropped off onto the road shoulder and because Mr. Peters's theory of the Commission's liability in this case is not based upon the Commission's having proximately caused his tires to leave the pavement. Mr. Peters seeks to prove, through the expert testimony of an accident reconstructionist, that the Commission's alleged negligent failure to perform necessary shoulder work prevented him, after leaving the road surface for whatever reason, from safely steering back onto Coldwater Road.
The second ground stated as a basis for the summary judgment is that it is "not foreseeable that the plaintiff's vehicle would leave the roadway without any explanation whatsoever as to the cause." The Commission and the amicus contend that the causation element of a negligence action requires evidence of factual causation and of foreseeability. The issue of foreseeability, as it relates to causation, however, is usually raised in connection with arguments of intervening cause or of concurrent liability and is not normally a requisite or independent prong of causation analysis. See Gilmore v. ShellOil Co., 613 So.2d 1272, 1275 (Ala. 1993) (stating that "a defendant who creates a dangerous 'condition' is not responsible for a plaintiff's injury that results from the intervention of another agency, if at the time of the defendant's original negligence the intervening agency could not reasonably be foreseen"); Thetford v. City of Clanton,605 So.2d 835, 840 (Ala. 1992) (holding that, as to the issue of proximate cause, "[t]he requirement of foreseeability is imposed to preclude a finding of liability when the defendant's conduct was part of the causal chain of events leading to the injury but the resulting injury could not have been reasonably anticipated by the defendant"); Springer v. Jefferson County,595 So.2d 1381, 1383-84 (Ala. 1992) (holding, in a concurrent liability case, that resolution of the issue of proximate cause rests on a determination of foreseeability and is analytically intertwined with the concept of intervening cause).
Neither side here argues as to whether Mr. Peters was contributorily negligent in causing his accident. Additionally, the foreseeability issue was not put before the circuit court in the Commission's second motion for summary judgment in the context of a question of duty or of breach of duty; nor did the Commission address the foreseeability issue in the context of a question of duty or of breach of duty in its appellate brief. The Commission's foreseeability argument, then, may be accurately understood only under the law of negligence and only as relating to whether Mr. Peters's initial act of allowing the tires on the right side of his automobile to drop off of Coldwater Road constitutes an unforeseeable intervening cause that renders the Commission not liable for any negligence in the maintenance of the roadway.
While the issue of foreseeability in the context of an intervening cause may be decided as a matter of law, seeGilmore, 613 So.2d at 1278 (holding that "suicide and/or deliberate and intentional self-destruction is unforeseeable as a matter of law"), it is more commonly a question for the trier of fact. See Thetford, 605 So.2d at 841 (stating that "[f]oreseeability is an issue for the jury to resolve");Springer, 595 So.2d at 1384 (determining that the plaintiff had "offered substantial evidence of both factual causation and foreseeability, and that he was entitled to have a jury decide those fact questions"). Under the circumstances of this case, the issue of foreseeability should be resolved as a question of fact. The act of leaving the traveled portion of an unstriped road, in or approaching a curve, and at night is not so egregious a departure from ordinary standards of care as to be unforeseeable as a matter of law. This is true even if the driver can offer no reason for leaving the road. A jury should decide whether Mr. Peters's leaving the road, under the circumstances, was so far outside the bounds of reasonable driving as to be unforeseeable by the Commission. Therefore, the circuit court erred in answering this question as a matter of law. *Page 851 
The Commission and the amicus cite Jones v. General MotorsCorp., 557 So.2d 1259 (Ala. 1990), and Smoyer v. BirminghamArea Chamber of Commerce, 517 So.2d 585 (Ala. 1987), for the premise that the Commission is entitled to a judgment on this issue as a matter of law. Those cases are inapposite. In Jones, this Court equivocated — saying that "we do not necessarily agree with the trial judge's 'proximate cause' rationale" set out in the trial court's judgment. Jones, 557 So.2d at 1265. That opinion is not authority for holding that the Commission's foreseeability arguments are controlling as a matter of law. The Smoyer case addresses the proximate cause issue in a negligence case but does not discuss foreseeability as it may relate to intervening cause or in any other respect. Smoyer,517 So.2d at 587-88.
Because the circuit court's order here decided the foreseeability issue as a matter of law, there is scant reference in the parties' briefs to facts directly related to the issue. The record reveals, however, that there is substantial evidence in this case to raise a material issue of fact as to whether it was foreseeable that a motorist, such as Mr. Peters, might leave the traveled surface of Coldwater Road: Mr. Peters's accident occurred at night; Coldwater Road was not striped on the outside edge; there is conflicting evidence as to whether the road had a yellow center line at the time of the accident; Mr. Peters's right-side tires left the roadway while he was in or approaching a curve; the road had been resurfaced for nearly three months before the accident; and several signs alerting drivers to dangerous shoulder conditions had been placed along other portions of the road, but there is also evidence that there were no such signs in the vicinity of the accident. This evidence, viewed as a whole and in a light most favorable to Mr. Peters, suggests that it might be fairly probable that someone would accidentally or negligently leave the traveled portion of the road. Thus, this evidence is sufficient to raise a genuine issue of material fact (see Rule 56(c), Ala.R.Civ.P.), because it is of such weight and quality that the trier of fact could reasonably infer that the Commission could have anticipated that a motorist might accidentally allow a vehicle's wheels to drop off the surface of Coldwater Road. See West v. Founders Life Assurance Co.,547 So.2d 870, 871 (Ala. 1989), § 12-21-12, Ala. Code 1975.
The third ground stated in the circuit court's summary judgment order is that, even if the Commission was negligent, there was no evidence of a causal connection between its negligence and Mr. Peters's accident. The circuit court's order states: "Any claim that the alleged low shoulder, lack of striping on the roadway or lack of warning signs on the roadway proximately caused the accident would be a product of pure supposition, speculation, conjecture or guess work."
The burden placed upon a party opposing a properly supported motion for summary judgment is to raise a genuine issue of material fact by presenting evidence of such weight and quality that the trier of fact could reasonably infer the existence of the fact alleged. West v. Founders Life Assurance Co.,547 So.2d at 871. The circuit court's order and the appellee's argument rely upon the fact that Mr. Peters does not remember what happened and the fact that there were no witnesses to his accident. While any assessment or reconstruction of what caused Mr. Peters's accident is necessarily speculative, that alone does not entitle the Commission to a summary judgment. InFolmar v. Montgomery Fair Co., 293 Ala. 686, 309 So.2d 818
(1975), this Court reviewed a summary judgment for a defendant in a personal injury case in which the plaintiff had tripped in the defendant's store, but did not know what she had tripped on. Reviewing the summary judgment under the old "scintilla rule" of evidence, this Court stated:
 "But the fact that an ultimate jury verdict in the plaintiff's favor might involve some speculation or conjecture as to what caused [plaintiff's] fall is not dispositive of this case. There is nothing wrong with a case built around sufficient circumstantial evidence, provided the circumstances are proved and not merely presumed. Any judgment in such a case must necessarily involve some amount of speculation or inference by the jury. There is conjecture only where there are two or more plausible explanations of causation, and the evidence *Page 852 
does not logically point to one any more than the other. Where the evidence does logically point in one direction more than another, then a jury can reasonably infer that things occurred in that way."
293 Ala. at 690, 309 So.2d at 821 (citations omitted). See alsoSouthern Ry. v. Dickson, 211 Ala. 481, 100 So. 665 (1924) (distinguishing "conjecture" from a "reasonable inference"). Therefore, the burden upon Mr. Peters in this case is to present substantial evidence that raises a genuine issue of material fact as to the circumstances upon which his theory of liability is predicated and that logically points to the validity of his theory of the accident over other possible explanations.
The Commission relies upon Mr. Peters's inability to explain why his automobile initially left the road and upon the testimony of two witnesses who viewed the accident scene. Billy Clemment testified that it appeared to him, on the day following the accident, that Mr. Peters had failed to turn where Coldwater Road curves; that Mr. Peters had hit a telephone pole and its guidewire; that paint was left on the pole and the guidewire; and that hitting the pole and the guidewire flipped Mr. Peters's car. Violet Clemment testified that approximately two weeks after Mr. Peters's accident she saw blue paint on the same telephone pole and that there was a slight bank near the pole that could flip a small car, such as Mr. Peters's, quite easily.[2]
The Commission also relies upon Jones, supra, and Smoyer,supra, to support its argument that there is no genuine issue of material fact as to the element of causation in this case. Again, the proximate causation rationale set out in the trial court's order in Jones was not adopted by this Court, and this Court questioned whether the rationale might not be more accurate as an analysis of the question of breach of duty.[3] As we stated above, on these facts Mr. Peters, to defeat a summary judgment motion, based on the defendant's argument of a lack of causation, does not have to present evidence that the allegedly unreasonably dangerous condition of the road caused him to leave the road surface. It is his contention that the negligence of the Commission proximately caused his accident; that but for the high shoulder drop-off he could have safely returned to the paved portion of the roadway. Thus, Jones is distinguishable. Smoyer is also distinguishable. In Smoyer
there was no evidence that the alleged negligent design of a driveway's intersection with a highway caused the accident in which the plaintiff was injured. The plaintiff's expert in that case testified that the driveway was defectively designed, but there was no evidence that the defect contributed to the plaintiff's injuries. Whether there is a genuine issue of material fact on the question whether the allegedly unreasonably dangerous condition of Coldwater Road caused Mr. Peters's injuries is the issue in this appeal. The Smoyer Court found no such genuine issue on the facts before it, but that does not obviate our examination of the facts in this case.
Mr. Peters relies upon circumstantial evidence and upon the professional opinion of an accident reconstructionist to establish the cause-in-fact of his injuries. On the day following the accident, or on the day after that, Mr. Peters's brother-in-law, Bruce Clemment, who resided on Coldwater Road, went to the accident scene, inspected the area, and took several photographs. Mr. Clemment testified that there was a four- to *Page 853 
five-inch drop-off from the road surface to the shoulder in the area of the accident. Mr. Clemment also stated:
 "From the scene, you could tell that he had ran off the road. It looked like where his tire tried to come back on the road it put him into a spin or he was going sideways, in other words. It had looked like his car had cut a flip because you could see where the tires grabbed the edge of the asphalt and then the car — You could see two imprints, where the tires had actually impregnated the impression of the tires and wheels on the asphalt. There was no skid marks in between there."
The height of the road surface, the impressions on the road surface, and the general condition of the accident scene were recorded in Mr. Clemment's photographs.
Further evidence was presented in the form of expert opinions. Roy Anderson, a traffic engineer, stated in his affidavit that the laying of "new asphalt in an amount of 4 inches or greater without grading the shoulder up to the level of the asphalt at the site where this accident occurred would pose a serious or significant safety hazard to any motorist traveling this highway." The Calhoun County engineer, Michael Shaw, acknowledged that shoulder work on Coldwater Road was necessary to make a smooth transition between the pavement and the shoulder, so as to provide an area in which a person could correct driving errors. Mr. Peters supports the causation element of his theory of liability against the Commission with the opinion of Edward Robinson, Ph.D., a physicist and an experienced automobile accident reconstructionist. Dr. Robinson reviewed the depositions of Mr. Peters, Mr. Shaw, and Mr. William Merritt, a representative of the asphalt company employed by Calhoun County to resurface Coldwater Road, as well as a videotape made by a newsperson for a local TV station showing Mr. Peters's automobile being removed from the accident scene. Dr. Robinson was also familiarized with Bruce Clemment's observations and photographs. On December 12, 1989, Dr. Robinson visited the area along Coldwater Road where the accident occurred.
Dr. Robinson's opinion, stated in his affidavit, was that, based on his education, experience, and investigation, "the high pavement edge drop-off which existed at the accident site contributed to causing Charles Peters' accident." Dr. Robinson continued:
 "The drop-off at the point where the Peters vehicle left the pavement, as indicated by scuff marks from the undercarriage of the car, was three and half [sic] inches. The drop-off increased a few yards down the road to a height in excess of five inches.
 "It is my professional opinion that such drop-offs created a severe hazard to a motorist attempting to get back on the pavement after having strayed onto the shoulder area adjacent to the pavement. There is the obvious potential for oversteering, as well as the very likely possibility that the driver would overcorrect and steer to his right after returning to the pavement. It is my opinion that such oversteering and overcorrecting occurred in this instances [sic], causing the vehicle to go off the left side of the road and to overturn."
Dr. Robinson's deposition testimony reaffirms and supports the opinions stated in his affidavit. In his deposition, he states, "I'm convinced that the cause of the accident was the severe shoulder drop-off."
Dr. Robinson's deposition sets out the physical evidence and the circumstantial evidence upon which his opinion is based. When he investigated the accident scene, Dr. Robinson found on the pavement surface marks consistent with those witnessed and photographed by Bruce Clemment. He noted, from watching the TV news videotape, that there were scrape marks on the underside of Mr. Peters's automobile; he said the presence of these scrape marks would support the opinion that Mr. Peters's right-side tires dropped off of a high pavement. Dr. Robinson dug in the shoulder, as it existed at the time of his visit to the accident scene, to determine the height of the drop-off from the repaved road surface to the shoulder at the time of the accident. He also disputes the correctness of the state trooper's findings *Page 854 
and of the trooper's ultimate opinion as to the cause of the accident.
The evidence presented by Mr. Peters is sufficient to withstand a motion for summary judgment in this case. First, Mr. Peters has raised genuine issues of material fact as to the circumstances upon which his theory of the Commission's liability is predicated. There is substantial evidence that this kind of accident could have been anticipated by the Commission. There is substantial evidence from Mr. Peters's experts that the condition of Coldwater Road was dangerous to motorists. There is evidence, from the testimony and photographs of Bruce Clemment and from the observations and opinions of Dr. Robinson, from which the trier of fact could reasonably infer that Mr. Peters's right-side tires left the road surface and that he lost control while trying to return to the paved portion of the roadway.
Second, Mr. Peters's evidence logically points to the validity of his theory of the accident over other possible explanations. The factual predicates underlying the opinion testimony of Billy Clemment and Violet Clemment must be presumed to a much greater extent than those underlying Dr. Robinson's opinion. For example, the evidence does not establish the exact color of Mr. Peters's car or of the paint seen on the telephone pole and its guidewire; whereas Dr. Robinson's opinion is supported by the physical evidence in this case, such as the indentations on the road surface and the marks visible in the videotape showing the underside of Mr. Peters's automobile. Additionally, Dr. Robinson explains in his deposition why he believes that the state trooper's conclusion is wrong, and he sets out the facts that contradict the trooper's conclusion. There is an element of speculation in Mr. Peters's theory of the Commission's liability, but his evidence points to the viability of that theory over other possible explanations of the accident.
Therefore, we must also conclude that the circuit court erred in holding that the evidence showed a lack of causation. Thus, the summary judgment, not being proper on any of the three grounds stated by the circuit court, must be reversed.
REVERSED AND REMANDED.
HOUSTON, KENNEDY, INGRAM, COOK, and BUTTS, JJ., concur.
MADDOX, J., dissents.
[1] The Commission did not assert that it was not the proper party to be sued. See Calvert v. Cullman County Commission,669 So.2d 119 (Ala. 1995), in which a county commission did make that assertion.
[2] There was also one other construction of Mr. Peters's accident in the evidence presented to this Court. The state trooper who filed the accident report relating to Mr. Peters's accident indicated in his report the opinion that "Mr. Peters lost control of his vehicle in a curve, ran off the shoulder of the road, came back onto the roadway, and overturned at least three times before coming to rest in a ditch on the northbound side of Coldwater Road."
[3] In Jones, the plaintiff argued that Shelby County had negligently designed and constructed a guardrail located at the entrance to a bridge; the bridge and the guardrail had been built 27 years before the plaintiff's accident. The plaintiff inexplicably ran off of the road and hit the guardrail. He argued that the negligence of the County increased the severity of his injuries. The County argued that the guardrail was a static condition that could not have caused the plaintiff to leave the road. The trial court held that, absent any evidence as to why the plaintiff's automobile left the road and hit the guardrail, any argument that the defendant's negligence was the proximate cause of the plaintiff's injuries would be conjecture.