RICHARD L. HOLMES, Retired Appellate Judge.
Gary H. Moore, individually, and as next friend and father of Daniel Moore, a minor, appeals from a summary judgment in favor of Kawasaki Motors Corporation, U.S.A.; Kawasaki Motors Manufacturing Corporation; Kawasaki Heavy Industries, Ltd. (hereinafter collectively referred to as Kawasaki); and D & H Cycle, Inc.
Our review of the record reveals the following pertinent facts: On June 5, 1989, Daniel Moore, who was 9 years old, received serious head, hand, and leg injuries when the 1985 Kawasaki three-wheeled all-terrain vehicle (ATV) that he was operating hit a telephone pole.
The only witness to the accident was Daniel’s friend, Jeremy, who was riding behind Daniel on the day of the accident. Jeremy testified that he was behind Daniel on the left side of the road and that it appeared as though Daniel was going to drive his ATV off the left edge of the road, go around the telephone pole, ride through a small pasture, and reenter the road somewhere ahead. It is undisputed that the telephone pole was approximately 30 feet from the edge of the road and was completely visible. Jeremy stated that he passed Daniel as Daniel went off the edge of the road and, thus, did not actually see him hit the telephone pole.
Daniel testified that he had no recollection of the accident. However, he testified that he was operating the ATV in a normal manner before the accident occurred and that he was not having any problems with the ATV’s operation. Jeremy also testified that Daniel was operating his ATV in a normal manner, indicating that the ATV was not malfunctioning.
On June 5, 1991, Daniel and his father sued Kawasaki and D & H to recover damages under the Alabama Extended Manufacturer’s Liability Doctrine (AEMLD), based on allegations of negligent and wanton design of the ATV, negligent failure to adequately warn of the dangers associated with the ATV, and breach of implied and express warranties.
Specifically, Daniel and his father sought to prove, through the expert testimony of an accident reeonstractionist, that the ATV began “plowing” as Daniel drove it off the left edge of the road and that Daniel, because of his age and small stature, was unable to turn the ATV to avoid hitting the pole. Daniel and his father also introduced the testimony of a product safety manager to show that the ATV was defective and unreasonably dangerous for children.
Thereafter, Kawasaki and D & H filed separate summary judgment motions, requesting that the trial court enter a summary judgment in their favor because, they said, the affidavit and deposition testimony of Daniel and his father was based on unverifiable speculation and conjecture. Daniel and his father responded with a brief in opposition.
On October 10, 1995, the trial court granted Kawasaki’s and D & H’s summary judgment motions on all counts. Daniel and his father filed a motion for reconsideration. The trial court, following a hearing, denied their motion, based on its finding that “the expert testimony is ‘unverifiable speculation’ that is not of assistance to the trier of fact and thus inadmissible as a matter of law.” Stated differently, the trial court determined *992 that Daniel and his father failed to produce substantial evidence on the element of proximate causation.
Daniel and his father appeal. This case is before this court pursuant to Ala.Code 1975, § 12-2-7(6).
On appeal an appellate court must decide whether a genuine issue of a material fact exists. If it is determined that no genuine issue of a material fact exists, then the appellate court must determine whether the moving party was entitled to a judgment as a matter of law. The appellate court must view the record in a light most favorable to the nonmoving party, and it must resolve all reasonable doubts against the moving party. McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957 (Ala.1992).
For purposes of reconstructing the accident, Joe Rogers Johnson, the accident re-constructionist, studied Jeremy’s and Daniel’s testimony regarding the events leading up to the accident, made measurements of the scars on the telephone pole, physically observed the dents on Daniel’s ATV, physically observed the extent of Daniel’s injuries, and studied Kawasaki’s owner’s manual regarding the ATVs “plowing” propensity. Johnson stated the following in his affidavit, in pertinent part:
“I conclude that Daniel turned left off of the roadway at a 20 degree angle to pass behind the telephone pole and reenter the roadway by a driveway located 60 feet east of the pole. With Daniel traveling at 5 to 10 miles per hour as he leaves the roadway, it only takes 2 to 4 seconds to travel the 30 feet to the pole. As he leaves the roadway Daniel continues to try and turn left, but his small 9-year-old stature and his height and weight make him unable to overcome the ‘plowing’ characteristic or tendency to continue straight ahead while trying to turn in off road conditions. The ATV strikes the [pole] first at the right side front wheel axle nut then at the right front fork tube clamp bolts. This impact snaps the handle bars hard right causing the vertical dent in the front of the fuel tank. The right handle bar also pins Daniel’s right leg to the fuel tank. The front impact to the ATV and hard right turn causes the rear of the ATV to start to rise as it goes forward. Daniel’s leg is caught between the ATV and the pole. This is followed by the right side fiberglass fender impact with the pole. Impact between the pole and the right rear fender stopped the ATV.”
Kawasaki and D & H argued that there could have been other explanations for the accident, such as Daniel’s inattentiveness, his self destructiveness, or the malfunctioning of a component part. However, Kawasaki and D & H offered no evidence to substantiate these theories or to dispute Johnson’s theory. Apparently, neither Kawasaki nor Johnson inspected the internal component parts of the ATV for malfunctions.
Albeit Johnson admitted that there were other possible theories for how the accident occurred, he, nevertheless, opined that “plowing” was the most probable theory. Johnson stated the following in his deposition testimony, in pertinent part:
“A My reconstruction of this accident is based on the propensity of these vehicles to plow and they must plow with very little provocation or steering input for you to consider such a problem or Kawasaki to consider it such a problem. They print instructions on how to get around it. Now, I have no evidence that says that [Daniel] was not paying attention, [that Daniel] was looking somewhere else. ... These are all possibilities for which we have nothing. The damage to the vehicle and the lack of fatal injuries to [Daniel] cause me to believe that the speeds involved were between 5 and 10 miles per hour.
“At those speeds [Daniel] has an opportunity to react as he leaves the roadway and the vehicle sets up a plow condition and drives straight into the telephone pole. Now, that is also based on the straight line that this vehicle makes going through the edge of the telephone pole and the final position [of the ATV].”
Johnson’s findings and opinion, viewed as a whole and in a light most favorable to Daniel and his father, suggest that “plowing” may have been the most likely cause of Daniel’s accident. While there is an element of speculation in Johnson’s theory of how the accident occurred, one could conclude that his “plowing” theory is a more *993 probable theory than those explanations offered by KawasaM and D & H. Thus, we find that Johnson’s testimony provided substantial evidence creating a genuine issue of a material fact, from which a jury could infer that the ATV’s “plowing” propensity was the cause in fact of Daniel’s accident. We note that “[wjhile any assessment or reconstruction of what caused [Daniel’s] accident is necessarily speculative, that alone does not entitle [Kawasaki and D & H] to a summary judgment.” Peters v. Calhoun County Comm’n, 669 So.2d 847, 851 (Ala.1995).
Daniel and his father further offered the testimony of Wm. F. Kitzes, a board certified product safety manager, to show that the ATV was unreasonably dangerous for children, that Kawasaki and D & H had a duty to warn of the dangers imposed by the ATV, and that Kawasaki and D & H represented the ATV as being safe for children.
Needless to say, we carefully studied Kitzes’s curriculum vitae and found it to be most impressive. Moreover, we found his testimony to be most credible and enlightening, especially with his background experience and expertise in the area of consumer safety. Kitzes, who has written an article regarding the hidden dangers of ATVs, stated the following in his affidavit, in pertinent part:
“5. In the instant case, it is my opinion that the subject [ATV] is defective and unreasonably dangerous under foreseeable conditions of use, specifically foreseeable use by a 9-year-old child. It is my opinion that while Kawasaki was fully aware of these unreasonably dangerous conditions, [it] made no adequate effort to inform ATV users of these dangers, which were not apparent either to the children or the parents.
“6. By June 24,1986, the date of sale of the [ATV] to Daniel and [his father], Kawasaki had received substantial information from the Consumer Product Safety Commission and other sources that the sale and distribution of three-wheeled ATVs for use by 9-year-old children created an unreasonably dangerous condition. The CPSC had held hearings on the subject, and had informed Kawasaki of over 200,000 hospital emergency room-treated injuries and over 500 deaths; 40% of these were children under 16, and 20% to children under 12.
[[Image here]]
“12. In December of 1987, Kawasaki and other ATV manufacturers and distributors entered into a Consent Decree with the United States Consumer Product Safety Commission. The final decree was approved by the U.S. District Court for the District of Columbia in April of 1988.
“The Consent Decree, which prohibited the further sale of all new three-wheeled ATVs, also provides that all past purchasers of adult-sized ATVs ... be provided with a warning which states, ‘NEVER operate this ATV if you are under age 16.’
“I am informed by counsel that no such warning or any additional warnings were received by [Daniel and his father] as required by the Consent Decree.”
(Emphasis added.)
Daniel’s father testified that, when he and Daniel went into D & H’s shop to purchase the ATV, the salesperson recommended an adult-sized ATV. In fact, Daniel testified that he originally sat on a child-sized ATV, but that the salesperson stated it was too small for Daniel. The salesperson represented the adult-sized ATV as being safe for Daniel, who was only six years old at the time.
Daniel’s father testified that he was unaware of any hidden dangers associated with the adult-sized ATV and that he would not have purchased the ATV if he had known, of its dangerous propensities. Daniel’s father further contends that the owner’s manual published by Kawasaki contained no warnings that the ATV was unsafe for children. In fact, the only récommendation provided by Kawasaki in its owner’s manual, as well as a label attached to the ATV, was that “Children must have adult instruction and supervision to operate this vehicle.”
Based on the foregoing, we find that Daniel and his father provided substantial evidence creating genuine issues of material facts, from which a jury could infer that the ATV designed and manufactured by Kawasaki was defective because it was unreasonably dangerous for a child of Daniel’s age; that Kawasaki had a duty to warn Daniel and his father of the ATV’s dangerous propensities; and that Kawasaki and D & H warrant *994 ed that the ATV was safe for a child of Daniel’s age.
In Cazólas v. Johns-Manville Sales Corp., 435 So.2d 55, 58 (Ala.1983), our supreme court stated the following:
“Under Alabama law, if a manufacturer or seller places goods on the market which are imminently dangerous when put to their intended purpose and the defendant knows or should know that the goods are dangerous when used in their customary manner, the defendant must exercise reasonable diligence to make such dangers known to the public likely to be injured by the product.”
Furthermore, “[i]f a product is unreasonably dangerous, it is necessarily defective, and the consumer should not be required to prove defectiveness as a separate matter.” Casrell v. Altec Industries, Inc., 335 So.2d 128, 131 (Ala.1976). “The question [of] whether a product is ‘unreasonably dangerous’ is for the trier of fact, just as a question of negligence is.” Yamaha Motor Co. v. Thornton, 579 So.2d 619, 621 (Ala.1991).
In viewing the evidence in a light most favorable to Daniel and his father, we conclude that there existed genuine issues of material facts to be resolved by a jury and that the trial court committed reversible error in not considering the expert testimony provided by Daniel and his father. Additionally, we would note that a summary judgment is rarely appropriate in personal injury cases. Cabaniss v. Wilson, 501 So.2d 1177 (Ala.1986).
Consequently, the trial court’s judgment is reversed and the cause is remanded for proceedings consistent with this opinion.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
REVERSED AND REMANDED.
All the judges concur.