PARKER, Justice.
 

 Case History
 

 The genesis of this case is a motor-vehicle accident that occurred on county road 88 in Lauderdale County. On January 11, 2003, Patricia J. Holt and Cori Nicole Howard, Holt’s granddaughter, were traveling to Lexington Elementary School in a vehicle that Holt was driving. To get to the school they had to travel across a narrow bridge over a creek bed. Before arriving at the bridge, Holt’s vehicle crested a hill, entered an “S” curve, which turned to the left and then to the right. As Holt approached the bridge, her car began to slide, apparently on ice, and she lost control of the vehicle. The vehicle hit the end of a concrete barrier on the side of the bridge, overturned, and landed upside down in the creek bed 10 feet below. Paramedics took Holt and Howard to the hospital. Howard was treated and released; however, Holt remained in the hospital for approximately 25 days.
 

 This case originated in the Lauderdale Circuit Court where Holt, her husband Charles Holt, and Howard, a minor, by her grandmother and next friend Patricia J. Holt (hereinafter referred to collectively as “Holt”), sued Lauderdale County and the county engineer, Ken Allamel, alleging negligence in that they breached their duty to maintain county roads in a safe manner, under both Ala.Code 1975, § 23-1-80, and the common law. Specifically,
 
 *403
 
 they contend that a guardrail, extending from the edge of the concrete barrier on the bridge, should have been erected and that such a guardrail would have prevented her vehicle from dropping into the creek bed. Both defendants filed motions for a summary judgment. On February 10, 2005, the trial court, with Holt’s consent, granted Allamel’s summary-judgment motion. On January 31, 2006, the trial court entered a summary judgment for Lauderdale County. On March 7, 2006, Holt filed a notice of appeal from the summary judgment for Lauderdale County. We reverse and remand.
 

 Standard of Review
 

 On appeal, this Court reviews a summary judgment de novo, applying the same standard of review as did the trial court.
 
 Hornsby v. Sessions,
 
 703 So.2d 932 (Ala.1997). To defeat a summary judgment, the nonmoving party must show substantial evidence creating a genuine issue of material fact.
 
 Ex parte General Motors Corp.,
 
 769 So.2d 903 (Ala.1999). “Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.”
 
 Hobson v. American Cast Iron Pipe Co.,
 
 690 So.2d 341, 344 (Ala.1997). In a negligence action, the plaintiff must show that a duty existed, that the defendant breached the duty, and that the breach caused the plaintiffs injury. See
 
 Bowden v. E. Ray Watson Co.,
 
 587 So.2d 944 (Ala.1991);
 
 Thompson v. Lee,
 
 439 So.2d 113 (Ala.1983). Lauderdale County contends that Holt has failed to meet her burden as to duty, breach, and causation.
 

 Legal Analysis
 

 A. Duty
 

 “A county, by virtue of its exclusive authority to maintain and control its roads, is under a common law duty to keep its roads in repair and in reasonably safe condition for their intended use.”
 
 Mixon v. Houston County,
 
 598 So.2d 1317, 1318 (Ala.1992). A county also has a statutory obligation to maintain the safety of its roadways. Section 23-1-80, Ala.Code 1975, provides that a county has “general superintendence of the public roads ... so as to render travel over the same as safe and convenient as practicable.”
 

 Lauderdale County attempts to limit its general duty, stating that there is “no authority ... that a county has a legal duty to install guardrails or other devices.” Lauderdale County’s brief at 13. Lauder-dale County also contends that no duty exists because at the time the bridge was built the bridge was in compliance with all safety regulations then in effect.
 
 Id.
 

 Lauderdale County appears to be arguing that in order to have a duty to perform a specific renovation to a county road, there must be some statutory authority requiring it to do so. However, Lauder-dale County cites no Alabama caselaw that suggests such a rule. It relies instead on a Kansas decision that refers to a line of cases, based upon a since-repealed statute, that held that “failure to place (or replace) a guardrail ... does not constitute a defect unless there is a statutory duty to erect such a ... guardrail.”
 
 Schmeck v. City of Shawnee,
 
 232 Kan. 11, 23, 651 P.2d 585, 595 (1982). Alabama does not have the same statutory scheme as did Kansas when
 
 Schmeck
 
 was decided. To the contrary, this Court has recognized that a county’s duty may require it to do more than is even required by a manual issued by the Sate and regulating roadways. In
 
 Jefferson County v. Sulzby,
 
 468 So.2d 112, 114 (Ala.1985), this Court, affirming a judgment against Jefferson County in an action arising out of a one-vehicle accident,
 
 *404
 
 said: “Claiming that because the Alabama Manual of Uniform Traffic Control Devices (AMUTCD) does not require edge-of-pavement markings or curve warning signs at the accident site, the County contends that it was under no duty, statutory or otherwise, to install such devices. We disagree.”
 

 In
 
 Springer v. Jefferson County,
 
 595 So.2d 1381 (Ala.1992), Jefferson County was sued for negligently failing to erect a guardrail on an allegedly unsafe stretch of road. This Court proceeded on the assumption that if Springer presented substantial evidence indicating that Jefferson County had negligently acted or failed to act and that a guardrail would have prevented the injury, then a summary judgment against Springer was inappropriate. 595 So.2d at 1384. There was no mention as to whether the guardrail was specifically required by statute, but the analysis proceeded under a county’s general duty to keep its roads safe. Clearly, under applicable Alabama law, the lack of explicit statutory obligation does not automatically eliminate a county’s general statutory and common-law duty to maintain safe roadways.
 

 Lauderdale County also cites no Alabama law for the proposition that the appropriate standard for bridge and guardrail construction and safety are the standards applicable at the time of construction of the bridge and not at the time of the accident. Alabama law clearly describes a county’s duty to “
 
 ‘keep
 
 its roads in a reasonably safe condition.’ ”
 
 Mixon,
 
 598 So.2d at 1318 (quoting
 
 Elmore County Comm’n v. Ragona,
 
 540 So.2d 720, 724 (Ala.1989)) (emphasis added). None of the limitations of that duty Lauderdale County proposes are sufficient to defeat its general statutory and common-law duty to keep its roadways in a reasonably safe condition. Thus, it is clear that Lauderdale County had a duty to keep the bridge and the roadway approaching it in a reasonably safe condition.
 

 B. Breach of Duty
 

 Once a duty is established, the question then becomes whether that duty was breached. A county’s “standard of care is to keep its streets in a reasonably safe condition for travel, and to remedy defects in the roadway upon receipt of notice.”
 
 Sulzby,
 
 468 So.2d at 114. Constructive notice of a defect, however, is enough to support an action based on a breach of duty.
 
 Tuscaloosa County v. Barnett,
 
 562 So.2d 166, 168 (Ala.1990).
 

 Lauderdale County alleges that there was no evidence presented indicating that there was a defect in the roadway. Laud-erdale County’s brief at 11. However, Holt’s expert, in his deposition, noted the speed limit on the road on which the accident occurred, the narrowness of the paved area on the bridge, the raw end of the bridge-barrier rail, and the steepness of the slope to the creek below and concluded that “any of those four factors by themselves would warrant a guardrail, but all four of them combined just almost makes it a necessity.”
 

 Lauderdale County appears to contend that the lack of a guardrail cannot be considered a defect in the roadway. Lauderdale County’s brief at 11. A county could breach its duty by failing to erect a guardrail.
 
 Springer,
 
 595 So.2d at 1386 (Houston, J., concurring in the result). This Court has stated: “The duty [to keep streets safe for travel] extends the entire width of the street and one injured by a defect or obstruction outside the prepared part may still be entitled to recover, if the defect is so near the traveled part as to render its use unsafe.”
 
 Jacks v. City of
 
 
 *405
 

 Birmingham,
 
 268 Ala. 138, 143, 105 So.2d 121, 126 (1958).
 

 Lauderdale County contends that, even if the lack of a guardrail can be considered a defect, it had no notice of the alleged defect. Lauderdale County’s brief at 11. However, as previously noted, notice can be constructive.
 
 Barnett,
 
 562 So.2d at 168. Lauderdale County clearly has maintained control of the bridge since its construction in 1937. Further, Holt’s expert, Dr. Deatherage, testified that “safety and construction standards such as the Roadside Design Guide require the construction of guardrails at points such' as the place where this accident occurred.” Holt’s brief at 6. There is a genuine issue of material fact as to whether Lauderdale County was put on constructive notice that the approach to the bridge was not reasonably safe.
 

 Lauderdale County states that “there is no accident data that would indicate that guardrails should be placed extending back from the end of that bridge,” and it uses the lack of such accident data to support its argument that it had no constructive notice of any defect in the bridge or the approach to the bridge. Lauderdale County’s brief at 5. However, the record reveals that there was no accident data available because Lauderdale County did not release the data. In response to the question, “Are you aware of any accident data that would indicate that guardrails should be placed at this place that we see on exhibit 1,” county engineer Allamel responded with a simple “no.”
 
 [1]
 
 The transcript of Allamel’s deposition reveals, however, that he was instructed not to disclose any accident data during the deposition, for fear that the State of Alabama would revoke Lauderdale County’s privilege of reviewing accident data in the future. Holt’s expert testified that “the physical evidence would indicate that there have been other impacts at this sight [sic].” But the absence of other accident reports in the record does not offset the testimony of Holt’s expert witness as to the road conditions at the scene of the accident and the existence of those conditions over time, which creates an issue of fact as to whether Lauderdale County had constructive knowledge of this alleged defect.
 
 Funera v. Jefferson County,
 
 727 So.2d 818, 822 (Ala.Civ.App.1998).
 

 C. Causation
 

 Lauderdale County also contends that Holt failed to show by substantial evidence that negligence on its part was the cause of her injury. In fact, Lauder-dale County states that “the absence of guardrails extending back from the end of the bridge was not the proximate cause of the accident.” Lauderdale County’s brief at 15. Lauderdale County relies on
 
 Jones v. General Motors Corp.,
 
 557 So.2d 1259 (Ala.1990), and implies that Holt’s failure to establish why her vehicle left the road makes her claim the “ ‘product of pure supposition, conjecture and guesswork.’ ”
 
 Jones,
 
 557 So.2d at 1265 (quoting trial court’s order). Lauderdale County’s reliance on
 
 Jones,
 
 however, is misplaced. The above-quoted text is from the trial court’s order. Neither in
 
 Jones
 
 nor subsequently has this Court endorsed the trial court’s rationale. “In
 
 Jones,
 
 this Court equivocated — saying that ‘we do not necessarily agree with the trial court’s “proximate cause” rationale’ set out in the trial court’s judgment.
 
 Jones,
 
 557 So.2d at 1265.”
 
 Peters v. Calhoun County Comm’n,
 
 669 So.2d 847, 851 (Ala.1995). Accord
 
 Ward v. Mor
 
 
 *406
 

 gan County,
 
 769 So.2d 884, 888 (Ala.2000). In
 
 Peters,
 
 basically in response to the very same argument presented here, this Court held, in part:
 

 “We find that the circuit court erred in basing the summary judgment upon this ground [that the unreasonable condition of the roadway was the cause of the accident], because Mr. Peters readily concedes that he does not know why his tires dropped off onto the road shoulder and because Mr. Peters’s theory of the Commission’s liability in this case is not based upon the Commission’s having proximately caused his fees to leave the pavement. Mr. Peters seeks to prove, through expert testimony of an accident reconstructionist, that the Commission’s alleged negligent failure to perform necessary shoulder work prevented him, after leaving the road surface for whatever reason, from safely steering back onto Coldwater Road.”
 

 669 So.2d at 850. Similarly, in
 
 Ward,
 
 this Court held:
 

 “Under the facts of this case, reasonable persons could disagree as to whether it was foreseeable that injury or death could result from Morgan County’s failure to repair the shoulder drop-off on Indian Hills Road or to warn of the drop-off level that existed after the resurfacing. The trial court stated in Morgan County’s summary judgment that it was not foreseeable that any part of Anthony Ward’s vehicle would leave the paved portion of the road in an area where the roadway was straight and during daylight hours. This is tantamount to concluding that it is unforeseeable that a driver will leave the road in an attempt to avoid an object, to avoid a collision with another vehicle, or as a result of simple inadvertence — all of these things, in fact, can happen on a straight road during daylight hours. Why Anthony Ward’s vehicle left the road is not the central issue in this case, given the fact that the complaint alleges that his death occurred because the low shoulder drop-off prevented him from being able to return to the road safely. Moreover, the county’s own engineer testified that it was ‘a known fact’ that vehicles leave the road for various reasons.
 

 “Ward presented substantial evidence from which a jury could conclude that the county knew or should have known that a member of the motoring public might experience difficulty returning a vehicle to the paved portion of Indian Hills Road and might as a result of that difficulty, caused by an unreasonably dangerous shoulder-drop-off level or caused by a failure to warn motorists of that danger, be involved in an accident.”
 

 769 So.2d at 888-89.
 

 Holt is not arguing here that any negligence on Lauderdale County’s pait caused her vehicle to leave the road; instead, she is arguing that Lauderdale County negligently maintained the approach to the bridge by failing to install guardrails. It is this failure, she alleges, that caused her vehicle to roll over into the creek. She maintains, through an expert witness, that had the guardrails been there, her vehicle would have been deflected back toward the road and would not have gone off the bridge into the creek. Holt’s brief at 6. Her proof for this claim goes beyond “mere conclusory allegations.”
 
 Brown v. St. Vincent’s Hosp.,
 
 899 So.2d 227, 238 (Ala.2004). Her expert stated that, had a guardrail been in place, Holt’s vehicle would have “been deflected back into County Road 88, or spun around to where she would have basically been protected sideways from going off the edge of the bridge,” and he opined that “had those guardrails been in place at the ... bridge,
 
 *407
 
 ... the accident would have been much less severe.”
 

 A defendant will not usually be liable for harm that is unforeseeable, even when it is proven that the defendant breached a duty.
 
 Thetford v. City of Clanton,
 
 605 So.2d 835, 840 (Ala.1992). The
 
 Peters
 
 Court stated that “a jury should decide whether Mr. Peters’s leaving the road, under the circumstances, was so far outside the bounds of reasonable driving as to be unforeseeable by the Commission.” 669 So.2d at 850. Applying this same test to the facts here, we conclude that a genuine issue of material fact exists regarding the foreseeability of the vehicle’s leaving the road under the circumstances. The hill and the curves approaching the bridge, the narrow bridge, and the possible ice on the roadway are all pertinent facts that could allow a juror to find that it is reasonable for Lauderdale County to foresee that a vehicle might leave the paved portion of the road.
 

 Conclusion
 

 The trial court’s ruling was in error. In this case, there were genuine issues of material facts, and those issues should have been presented to a jury for its decision. The summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and WOODALL, SMITH, and MURDOCK, JJ., concur.
 

 SEE, LYONS, STUART, and BOLIN, JJ., concur in the result.
 

 [1]
 

 . Exhibit 1 is mentioned in a partial transcript from Allamel's deposition that was attached to Lauderdale County’s motion for a summary judgment. The available portion of the transcript does not say what the exhibit is.